Antonio Bernardi, Appellant, *v.* The New York Central and Hudson River Railroad Company, Respondent.

*Duty of a master to his employees — delegation of — explosion of dynamite transported by a railroad company.*

A master owes to his employees the duty of exercising proper care in furnishing suitable machinery for doing the work in which his employees are engaged, and the care required depends on the exigencies of the case and the dangers incident to the business.

It is the duty of a railroad corporation to exercise due care to provide proper cars for the transportation of powerful explosives over its road, and it cannot escape liability for damages caused by its failure to exercise such care by delegating its duties to an employee of inferior grade who happens to be a co-laborer with a person injured.

Appeal by the plaintiff, Antonio Bernardi, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 1st day of February, 1894, upon the dismissal of the plaintiff's complaint directed by the court after a trial at the New York Circuit before the court and a jury.

*Arthur Furber*, for the appellant.

*D. W. Tears*, for the respondent.

FOLLETT, J. :

This action was brought to recover damages for personal injuries caused by an explosion of dynamite on one of defendant's cars near Tarrytown, on the 19th of May, 1891. The cause of action alleged in the complaint is that the defendant negligently loaded and carried on a car in its train near the locomotive, a large quantity of some highly explosive material which was wholly unprotected and by reason thereof exploded, causing the injuries complained of. It is not alleged that the defendant neglected to furnish a suitable car for the transportation of this explosive, or that it neglected to pre- scribe and enforce some particularly necessary rule regulating the time and mode of transporting it. However, the record does not show that any question was raised over the sufficiency of the com- plaint to permit a recovery for the defendant's neglect to discharge duties which a master owes to his employees. The defendant, by its answer, admits that an explosion of blasting material occurred on one of its cars on the date alleged while being drawn by a locomo- tive over its road, but denies that it was negligent, and alleges that the accident was caused by the negligence of the plaintiff's compe- tent fellow-servants and by his own negligence, or by the concurrent negligence of the plaintiff and of his fellow-servants. When the plaintiff rested the defendant moved that the complaint be dismissed on four grounds : (1) That no cause of action had been made out ; (2) that no negligence on the part of the defendant had been shown ; (3) that the negligence, if any, was that of the plaintiff's fellow- servants ; (4) that the plaintiff had not shown that he was free from contributory negligence. The motion was granted, the plaintiff excepted and also requested that the case be submitted to the jury on the issues of fact presented by the evidence, which was denied and an exception taken.

It is well settled that there are certain duties which a master owes to his employees, and among them is the duty to exercise proper care to furnish suitable machinery for doing the work in which employees are engaged. It was the duty of this defendant to exer- cise due care to provide proper cars and means for transporting this

powerful explosive over its road, and it cannot escape liability for damages caused by the failure to exercise such care by delegating its, the master's, duties to an employee of inferior grade who happened to be a co-laborer with the person injured. This rule is settled by *Flike* v. *Boston & Albany R. R. Co.* (53 N. Y. 549); *Crispin* v. *Babbitt* (81 id. 516); *Benzing* v. *Steinway & Sons* (101 id. 547); *Hough* v. *Railroad Co.* (100 U. S. 213); *Wilson* v. *Merry* (1 H. L. Ser. 326), and does not need to be elaborated. This brings us to the question whether the evidence was sufficient to have authorized the jury to have found that the defendant neglected to provide a safe car for transporting this explosive. The nature of the explosive was described by the manufacturer who was called as a witness and testified: "Nitro-glycerine is the basis of it (Ajax powder), with other things as an absorbant; its commercial name is dynamite; it is put up in cartridges; I think these cartridges were eight inches long by about one and one-quarter in diameter. The cartridges are made of paper submerged in paraffine, and then filled with this dynamite and the ends closed up; it is a very explosive substance; it is discharged by a cap; heat will sometimes discharge it and sometimes not; concussion discharges it; the explosion of the cap is a concussion, and it is exploded by a cap; we do not allow smoking around where dynamite is kept; we prohibit it; we prohibit men carrying matches, and all that sort of thing; we prohibit anything that is apt to ignite from being around where dynamite is. Q. The Court: Would it (dynamite) explode from contact with live sparks — coal sparks? A. No, I think not. If dynamite got on fire it might explode from the heat of the fire after a time; at first it would burn. We have had explosions in our works; that is, they have had the powder burn up, and the people got away without having an explosion. The powder was in cartridges. I cannot say what degree of heat you can apply to cartridges before they will explode. We have known a whole carload to burn up without exploding — twenty thousand pounds; that would be where there was plenty of space in the open air; but if you should confine it in this room and set it afire, where it would not get plenty of air, the oxygen would soon be exhausted and it would go up. It would explode; and if there were detonators or caps there they would explode by the heat of the fire, and they would explode the dynamite

if they were in direct contact with it.  \* \* \*  This Ajax powder was harder to explode than nine-tenths of the powder we made.  It was made especially for the New York Central & Hudson River Railroad Co., under instructions from them to have it made with as great care as possible."

Such was the character of the explosive used as described by the person who made it for the defendant.

At the time of the accident the defendant was, and for some months before had been, engaged in constructing a third track between Spuyten Duyvil and Sing Sing, and in the work it used the explosive above described which was manufactured for its use.

For some months before the accident the plaintiff had been employed by defendant on its tracks, but his work had no connection with blasting or with the employees engaged in that work, or in running the work train.  Prior to May 19, 1891, about thirty workmen had been engaged in blasting and removing rock at Dudley's Grove, which is about seven miles south of Tarrytown.  At this place there was a powder shanty in which dynamite was stored, which was near the track, but how near does not appear.  These employees, known as "Finnegan's gang," on the morning of May nineteenth began work just south of the village of Tarrytown and between six and seven miles north of Dudley's Grove.  After working two or three hours they were directed to get on board the work train, consisting of a locomotive and one open flat car, on which they were carried to Dudley's Grove, where they loaded upon this flat car the dynamite stored in the powder shanty, together with the tools and materials which they had used at that place.  The undisputed evidence is that between twenty and thirty boxes of dynamite cartridges were loaded on the car.  Every one of the boxes was about twelve by twenty-four inches in size, containing cartridges eight inches long by about one and one-fourth inches in diameter. There were also twenty-three or twenty-four packages of caps, detonators or exploders, which were used for exploding the cartridges.  These exploders were loaded on the front end of the car, on top of the dynamite, some of them being covered and others not. After the car was loaded the workmen got on to it and the train started for Tarrytown.  Two witnesses, who were uncontradicted,

described what occurred on the trip : " The car went about three miles and a half before anything particular happened. Then the powder took fire and they exploded. I saw what caused the powder to take fire. The particles of coal coming from the smokestack of the engine lighted the powder and caused the explosion of the other boxes. * * * I saw the sparks fly from the engine and light upon parts of the load upon the car. They all put the collars of their jackets up to prevent the sparks from striking them. The particles of coal fell all over the load. I was riding about in the middle of the car. The front part near the engine took fire."

Another witness testified : ". The explosion took place a quarter of a mile before getting to Tarrytown. Just before the explosion I saw particles of coal coming from the smokestack of the engine and they burned our clothes. Particles of coal fell upon our coats, and one of my companions told me it was burning his coat, and he was just taking it off when the explosion took place. I did not see any fire upon the car before the explosion. I did not see any sparks from the engine fall on the boxes." Plaintiff's counsel, addressing defendant's counsel : " Will you admit that the explosion took place from the sparks of the engine ? A. I have not any doubt that the explosion took place after the sparks came from the engine and lit upon the contents of the car. I am not prepared to dispute that, and there is no use piling up evidence of that fact."

From this evidence the jury might have well found that the explosion was caused by the sparks from the locomotive, and they might have found that the defendant did not exercise due care to furnish safe means for the transportation of this explosive. It cannot be held upon the evidence, as matter of law, that this plaintiff contracted to incur the risks incident to the transportation of this quantity of dynamite over the road on which he was employed, in the manner described, and if it shall be found as a fact that the car used was unsafe and unfit for the transportation of this explosive, and that the defendant negligently permitted it to be used for that purpose, the plaintiff will be entitled to a verdict. The care and diligence required of a master to furnish safe machinery and materials for the services in which it is used depend on the exigency of the case and the dangers incident to the business. It is apparent, we think, to all, that employees and inhabitants on the line of the

railroad and passengers on its trains would be exposed to great perils by the explosion of such a quantity of dynamite, and the care which defendant was required to exercise to prevent such an occurrence should have been commensurate to the liability of the article to explode and the dangers to be apprehended from an explosion. Upon principle and authority it was a master's duty — the defendant's duty — to exercise great care in furnishing safe means for the transportation of this explosive, and, under the evidence, it was a question of fact whether it used such care on that occasion. There is no evidence that the plaintiff in any way contributed to the acci dent or its results by any act or omission of his own.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment reversed and new trial granted, with costs to appellant to abide event.