of the insured, the right of set-off would exist, which would fully protect the company. Furthermore, the taking of premium notes was not part of the contract of insurance, and was wholly discretionary with the company itself, and the company might well protect itself by requiring full cash payments from those who were not responsible and from whose estates the premium notes could not be afterwards collected. The Special Term has found as a fact that five premiums upon the first policy and four upon the second have been fully paid. That finding is, I think, sustained by the evidence, and it follows that the interlocutory judgment entered should stand.

(118 App. Div. 432)

### KELLY v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Third Department.    March 13, 1907.)

MASTER AND SERVANT—ACTION FOR INJURIES TO SERVANT—QUESTION FOR JURY.
   Plaintiff's intestate, who was an employé of defendant railroad company, was killed by an explosion of dynamite caused by a rear-end collision of his train with another. The dynamite was being carried on the forward train, containing over 50 cars, only 9 or 10 of which were not equipped with air brakes, in one of the cars not equipped with air brakes, and which car was located next to the caboose. Defendant's rules required that cars for carrying high explosives must be first-class in every respect, and must be placed in their train as near the middle as possible. *Held*, that whether the explosion was not partly due to the negligence of the master, as well as that of a fellow servant, in that it failed to use reasonable care in furnishing a proper car for the transportation of the dynamite, was for the jury.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1016, 1061.]

   Cochrane, J., dissenting.

Appeal from Trial Term.

Action by John G. Kelly, administrator, etc., of John H. Kelly, deceased, against the Delaware, Lackawanna & Western Railroad Company. From a judgment for defendant, plaintiff appeals. Reversed, and new trial granted.

   The action is one for damages for the death of plaintiff's intestate, caused by the alleged negligence of the defendant. The deceased was the head brakeman on a "wild cat" train operated by the defendant. It was running westbound, and following regular train No. 61, and was supposed to run about 20 minutes later than 61, which was a freight train made up at Scranton to run to Buffalo. On its way west train 61 stopped at Vestal station for water. This took 10 or 12 minutes. Just as it got in motion again the "wild cat" train ran into it in the rear, while running at a speed of from 20 to 25 miles an hour, and the impact between the two trains caused the explosion of 24,000 pounds of dynamite which was contained in the car situate next in front of the caboose in the rear of train 61. The intestate was killed by such explosion. The defendant had promulgated rules for the transportation of high explosives, which provided that cars for carrying such explosives "must be first-class in every respect" and "must be placed in their train as near the middle as possible." When train 61 was made up at Scranton, it consisted of 35 cars, about 25 of which were equipped with air brakes and were placed in the train ahead of 10 other cars, which were not equipped with air brakes. The car loaded with dynamite was among the 10 not so equipped, and was placed third from the rear; there being another car between it and the caboose, which was to

be taken off the train at Binghamton. The train was made up at Scranton under the direction of the assistant trainmaster there. When it reached Binghamton it was disconnected at the junction of the air and the nonair cars, and 7 or 8 cars were taken off on the head end of the train, besides the 1 car at the rear end, between the car of dynamite and the caboose, and about 25 cars were taken on, so that the train, when it left Binghamton, was composed of over 50 cars, in which the car of dynamite was next to the caboose. It does not clearly appear in the evidence how the cars so taken on were equipped; but one witness stated that they were mostly air cars, and were put on the head end of the train. The changes at Binghamton and the making up of the train there were under the direction of the conductor of train 61, aided by his crew. The train thus made up then proceeded to Vestal, where the collision took place as before stated. There were two engines drawing the "wild cat" train, both at the head of the train, and deceased was riding in the cab on the left-hand side of the second engine. Both engines were blown to pieces by the force of the explosion, and several lives were lost. The accident happened before the passage of the employer's liability act (chapter 600, p. 1748, Laws 1902).

Argued before SMITH, P. J., CHESTER, KELLOGG, and COCHRANE, JJ.

H. H. Rockwell, for appellant.
Halsey Sayles, for respondent.

CHESTER, J. While it is not so stated in the record, it is evident that the decision of the trial justice in dismissing the complaint was placed on the ground that the accident was caused solely by the negligence of a coemployé. The respondent claims this, and the appellant concedes that the evidence shows that the collision was caused either by the negligence of the engineer of the leading engine on the "wild cat" train in not seeing the train on the track in front of him, or by the negligence of the crew of the train 61 in failing to send back a flagman the proper distance to warn the approaching wild cat train. Nevertheless it is apparent to us that if the case had been submitted to the jury it could have found that the explosion which killed the decedent was caused partly by the negligence of a coemployé and partly by the negligence of the master. If the facts should be so established, the plaintiff would be entitled to recover, under the rule of law that, where an injury to an employé is caused partly by the negligence of another employé and partly by that of the master, the negligence of the coservant will not excuse the defendant from the consequences of its own fault. Ellis v. N. Y., L. E. & W. R. R. Co., 95 N. Y. 546; Strauss v. N. Y., N. H. & H. R. R. Co., 91 App. Div. 583, 87 N. Y. Supp. 67.

The car in which the dynamite was loaded was furnished by the master. It was not a car equipped with air brakes. In a train composed of over 50 cars, only 9 or 10 of which were not so equipped and the remainder of which were so equipped, it is manifest that the car of dynamite could not have been placed in the middle of the train, in compliance with defendant's rule, without having a large part of the rear portion of the train disconnected from the locomotive in such a way that the air brakes upon such part could not have been utilized in controlling the train. It could have found that the master, by providing this car for the transportation of dynamite, had put it beyond the power of its employés to comply with its rule with respect to the transportation of high explosives. We think, therefore, that

it was for the jury to say, as matters of fact, whether the defendant used reasonable care in furnishing this car for the transportation of this large quantity of dynamite, and whether it was a proper one for that purpose under the circumstances, and one which its employés could have placed in the train where its rule required. The case appears to be brought squarely within the rule laid down in Bernardi v. N. Y. C. & H. R. R. Co., 78 Hun, 454, 29 N. Y. Supp. 230. There, as here, the appeal was from a judgment of dismissal of the complaint, and the injury caused by the explosion of dynamite being transported on one of the defendant's cars, and the court said:

"It was the duty of this defendant to exercise due care to provide proper cars and means for transportation of this powerful explosive over its road, and it cannot escape liability for damages caused by the failure to exercise such care by delegating its (the master's) duties to an employé of inferior grade who happened to be a colaborer with the person injured."

It was a question there as to whether the explosion was caused by sparks from the locomotive coming in contact with dynamite being transported on a flat car, and the court said that the jury might have found "that the explosion was caused by the sparks from the locomotive, and they might have found that the defendant did not exercise due care to furnish safe means for the transportation of this explosive," and   "* * * if it shall be found as a fact that the car used was unsafe and unfit for the transportation of the explosive, and that the defendant negligently permitted it to be used for that purpose, the plaintiff would be entitled to a verdict." We think, on the authority of that case, there was a question for the jury, and that there should be a new trial.

Judgment reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except PARKER, P. J., not voting, not being a member of this court at the time this decision is handed down, and COCHRANE, J., who dissents.

COCHRANE, J. (dissenting). The reversal is based on the authority of Bernardi v. New York Central & Hudson River Railroad Company, 78 Hun, 454, 29 N. Y. Supp. 230. In that case the explosive was conveyed on a flat car so near to the locomotive as not to be protected from the sparks therefrom, and it was held that it was a question for the jury whether the defendant exercised due care to furnish safe means for the transportation of this explosive. Assuming in the case before us that the car on which the dynamite was being transported did not comply with the defendant's rule that it should be "first-class in every respect," for the reason that it was not equipped with air brakes, nevertheless such rule was supplemented with another rule that cars for carrying such explosives "must be placed in their train as near the middle as possible." It clearly appears that this latter rule was disregarded by the defendant's employés. If it were necessary that the air brakes on all the cars equipped therewith should be used, nevertheless it was possible to place the car in question considerably nearer the center of the train. But the evidence shows that air brakes could be disregarded, and cars equipped therewith could be used without reference thereto, and thus placed at the end of the train, and

no reason appears why that could not have been done in the train in question, and the car of dynamite placed in the center of such train. In any event, as above stated, such car could have been placed much nearer the center. There seems to have been a clear disregard of a rule which, if observed, would have prevented such consequences as resulted from the accident in question. Were it not for the rule as to the placing of this car as near the middle of the train as possible, and the failure of defendant's employés to comply with such rule, perhaps the Bernardi Case would be applicable. But it falls short of reaching the present situation. It is idle speculation and guesswork to reason that, if this car had been equipped with air brakes, it would have occupied any other position in the train.

I think, therefore, the judgment should be affirmed.