Undue influence on the part of a beneficiary under a will, in procuring testator to make a codicil, is not shown merely by the fact that the beneficiary was testator's counsel and adviser; that testator was in feeble health when the codicil was made, while the will which it changed was made when testator was in good health,—where such beneficiary was not benefited by the changes effected by the codicil.

Proceeding for the probate of the will of John J. P. Read, deceased.

Edmund P. Cottle, for Octavius O. Cottle, executor and proponent.

Marshall, Clinton & Rebadow, for Clayton L. Hill, executor, and Rowena F. Hill, contestants.

Marcy & Close, for George Baltz, treasurer of the county of Erie.

Frank M. Parsons, Dep. Atty. Gen., for the People.

MARCUS, S. There is no contest as to the probate of the instrument dated March 9, 1894, but the controversy is between strangers in blood to the testator, and grows out of the instrument bearing date January 3, 1896, which purports to be a codicil to the will mentioned, and which is contested by Clayton L. Hill and Rowena

F. Hill on the following grounds, briefly stated: First, that the instrument offered is not the testator's last will, nor does the same form any part of the last will and testament of the deceased, and that the alleged execution is not the free, voluntary, or unconstrained act of the decedent; second, that at the time when executed, if ever executed, the testator was not of sound mind; third, that the said paper was not subscribed, published, and attested as and for his last will, or as a part of the same, in conformity with the statutes; fourth, the said paper propounded is invalid, and is illegal and void.

All of these objections, which are general and sweeping, and which were, no doubt, introduced for the purpose of allowing the testimony of the contestants to cover every conceivable fact favorable to them that might be revealed or discovered in the course of these proceedings, must fail for the total want of proof, with possibly the exception of the first, which alone is worthy of consideration. Throughout the entire progress and hearing of this case it seemed clear that the only question to be considered and determined was whether the testator, at the time of the making of the codicil, was of sound mind and memory, within the meaning of the law. Upon the argument, however, the counsel for contestants stated, and freely conceded, that the court might have been led astray by the proof which was offered, seemingly for the purpose of showing the testator to have been of unsound mind, whereas the mental capacity of the testator was not, in fact, questioned by the contestants, but the evidence offered was only for the purpose of showing a gradual and steady mental and bodily decay, and for the purpose of showing undue influence on the part of Mr. Cottle in the execution of the codicil, by the coincidence of "four things":

First. "That Mr. Cottle was his general counsel, attorney, and adviser; that it was under his supervision, and he is a beneficiary under it, since it removes obstacles to his receiving provisions for his benefit under the will. Second. That the testator was in feeble health, and weak, mentally and bodily, when the codicil was made. Third. That it changes a prior will made when the testator was in good health and strong. Fourth. That it changes the purpose shown by a former will, and persisted in up to the time of his death,—that is, to provide for his benefactors, Doctor and Mrs. Hill; and this change is made without any apparent motive, and apparently without his being cognizant of it, since he continued to treat Doctor and Mrs. Hill with the same consideration as before, and never once alluded to the fact of the codicil being made; that this codicil is the more remarkable in that its effect is to punish Doctor and Mrs. Hill in depriving them of their legacies under the will, while those legacies are given to no one else, no motive for this extraordinary change being even hinted at."

The position of the contestants is that from these facts more evidence of the formal execution of the codicil ought to be made, and that until proof is given that the codicil was executed by the testator with full knowledge of its effect, and while in possession of sound mind and memory, and while fully conscious of what he was doing, probate of the same should be refused. The points raised by the contestants all narrow down to the question of undue influence. "Undue influence," as used with reference to wills, has been defined as "that which compels the testator to do that

which is against his will, from fear, a desire of peace, or some feeling which he is unable to restrain." Schouler, Wills (2d Ed.) par. 22. The influence that will avoid a will on account of undue influence must amount to moral coercion, restrain independent action, and destroy free agency, or the importunity must be such as to constrain the testator to do that which is against his desire. Society v. Loveridge, 70 N. Y. 394. The underlying idea of undue influence is that the will of another is substituted for that of the testator nominally acting, and whose act is only the expression of another, so that all question of free agency fails. Any influence, to be material, must be operating, and must actually produce an effect which is clear. It can never be inferred from mere opportunity. It must arise in one of two ways,—either from proof, or presumption of law.

In order that a will may be avoided because of undue influence, it must be an influence exercised by coercion, imposition, or fraud, which must be proved, but cannot be inferred because of opportunity or interest. Seguine v. Seguine, 4 Abb. Dec. 191. To invalidate a will on the ground of undue influence, there must be affirmative evidence of the facts from which such influence is to be inferred. It is not sufficient to show that a party benefited by a will had the motive and opportunity to exert such influence. There must be evidence that he did exert it, and so control the actions of the testator, either by importunities which he could not resist, or by deception, fraud, or other improper means, that the will is not really the will of the testator. Cudney v. Cudney, 68 N. Y. 148. Certain forms of influence, such as suggestion and advice, or solicitation, persuasion, and entreaty, unless the testator is worn out by importunities, so that his will at last gives away, have been held not to be undue, although the amount of pressure allowable always depends upon the relation of the parties in each case, and the strength of the testator's resistance. In other words, the only matter to be determined is, is the influence irresistible? If it is not, the influence is not undue, and this coincidence is immaterial, even though the testator is influenced and finally yields, and the will is executed in accordance. The burden of proof has been held almost, if not quite, generally to be upon those who allege it; and any one contesting a will on those grounds who sets the same up in his pleadings must prove such undue influence by a fair preponderance of evidence. Direct proof is never required, but always may be inferred from other facts proven. The fact of fiduciary relationship alone does not raise a presumption of undue influence, unless combined with other circumstances tending to fairly show an imposition. Such would be the fact if one in confidential relationship drew a will, or caused it to be drawn, in his own favor, if the testator was of weak mind, or if a person in a close position to the testator made active personal efforts to procure a will in his own favor. What the degree of confidential relationship is, and the extent of confidence reposed, is always to be inferred from the circumstances. As between an attorney and client, the law regards them in positions of confidence, one to the other.

There are many cases which hold that where one sustaining a fiducial relation to another, such as trustee, guardian, etc., is concerned in framing that other's will to his own advantage, the instrument ought to be scrutinized closely. That is undoubtedly true, and all such law is claimed to be applicable to this case, since undue influence is inferred from the fact of the fiducial relation of Cottle and the testator, as attorney and client. The relation unquestionably existed, but the judicial decisions which declare that the exertion of such influence by one who holds a fiducial relation to another is deemed suspicious cannot even be inferred from the evidence that this codicil was procured to be made and executed by the undue influence of Mr. Cottle, and, as for direct or positive proof, none appears. This case is unique in the absence of proof, either direct or circumstantial, from which undue influence or influence of any nature can be found. It can hardly be contended that simply because of the fact that Mr. Cottle was the attorney and counselor of Mr. Read, and drafted the codicil, there should arise a presumption of undue influence. I am unable to find any authority for the contention that where an attorney and counselor drafts a will for his client, and is himself named as a beneficiary, such act of itself raises any presumption of undue influence; but, on the contrary, the law requires something more than mere suspicion or opportunity. There must be some affirmative evidence of undue influence. In Re Smith, 95 N. Y. 516, it was held that undue influence must be proved, and cannot be presumed; that the mere fact of the principal legatee being an attorney of the testatrix does not create a presumption against the legacy given by the will. Where, however, the fiduciary relation exists, and a change of testamentary intention has taken place, the age, mental and physical condition of the testator, added to the fact that the draftsman of the will took active part in procuring its execution, is sufficient to require an explanation, and throw the burden of proof upon the proponent. But we are not considering such a will. While it is true that, by this codicil offered for probate, a change of testamentary disposition took place, it was only in the striking out of all benefits for the contestants. The instrument bearing date March 9, 1894, directed that Mr. Cottle should receive certain benefits. The codicil in no way adds to or diminishes them. The bequests to Cottle are left undisturbed, and not increased, and are the same as the testator intended and willed they should be at the time he likewise remembered the Hills. If any undue influence was exercised on the part of Cottle, it was not in any sense for his own benefit or increased advantage, so that we are not at all considering even an instrument drawn in favor of an attorney, but simply a new will, withdrawing a bequest to a beneficiary named in a former uncontested will of the deceased.

There is no evidence from which it can be inferred that Mr. Cottle is benefited by the codicil, or that his prospects of getting what the testator originally gave to him were enhanced by the taking away of what was given to Dr. Hill and Mrs. Hill. This case is

absolutely free of any testimony to the effect that Mr. Cottle or any one else exercised or attempted to exercise any influence on the testator in the drafting of this codicil. And even though one is in the position of confidence, as it is assumed Mr. Cottle was with the testator, so as to be able to have influenced him directly or indirectly in the drawing of the codicil, such influence must have been effectively exercised to avail the contestants. The mere fact of being in the confidential relation with the testator, and therefore in a position to exert his influence, fails, unless the acts are shown. I am unable to find any facts or circumstances from which any undue influence, or influence of any kind or nature whatsoever, can be inferred, that would suggest that this codicil does not express the intention of the testator. When it is remembered that the mental capacity of the testator is conceded by the counsel for the contestants, and that there is an entire absence of any form of proofs of any interference by any person with the free exercise of a disposing mind on the part of the testator, the circumstance that the court cannot fathom the reasons which may have led the testator to abandon his original intention can be of no purpose.

Unless the law is declared to be that where a will is drawn by a testator, making a bequest to a person standing in a confidential relation to him, and some years thereafter the testator has a codicil drawn by such beneficiary whereby the disposition of his estate as to others is changed, but the bequest to such beneficiary is neither increased nor otherwise affected, such codicil is void, because of the presumption of unfair dealing or undue influence, then it must be declared that this instrument contains the true will of the decedent. A testator has the right to dispose of his estate in any way he may deem best. The law does not require him to make an equitable will, and he may choose his beneficiaries as well as reject them. His wishes and judgment are sole and supreme. He has the right to make whatever disposition of his property he chooses, however absurd or unjust it may be, if he has capacity and free volition. It is also pertinent to remember that the bequest to Cottle in the will of the decedent is given in lieu of any charges for services that may have been rendered by Mr. Cottle to the testator that remain unpaid, and that, upon the examination, Dr. Hill conceded that an arrangement had been made between himself and the testator during his lifetime for compensation for his care and services to the testator, and therefore he is presumed to have an adequate remedy to recover any claim he may have against the estate. The law does not require a will to be in accordance with what a testator may have previously declared his intentions to be, even though such declarations were made almost to the moment of his death, assuming, of course, that the testator is mentally sound and free from undue influence or fraud being practiced upon him; nor does the law require the testator to be in the same relative physical and mental condition of strength that he was before he may have changed or added to a previous disposition, always assuming that the testator is of sufficient mind and memory, and not under restraint or undue

influence or fraudulent misrepresentation; otherwise, a change of testamentary disposition would be practically barred. It is also to be borne in mind that the testator had no ties of blood, affinity, or marriage, and, it seems, little or no appreciation of friendship, duty, or moral obligation. If it were for the court to determine whether Mr. Read acted fairly or even wisely in making the change effected by his codicil in the disposition of his litigious holdings, it would require no effort to disagree with his dispositions; for he, undoubtedly, owed to the contestants many of the latter years of his life, by reason of their having taken him from his uninhabitable surroundings to their own home, with its attendant care and comforts. But it is not the province of the court to determine who is best entitled to a testator's bounty, or whether, if in the place of the testator, under the same conditions and circumstances, a different will would have been made, but only to declare whether the will expresses the wish of the testator, as I am clear it does in this case. I am satisfied, therefore, that the execution of this codicil has been duly proved; and, as there is no evidence establishing fraud or undue influence, it should be admitted to probate.

Decreed accordingly.