In the Matter of the Probate of the Will of ELIZA M. SMITH, deceased.

The fact that the beneficiary was the attorney of the decedent does not alone create a presumption that a testamentary gift was procured by fraud or undue influence.

*It seems*, however, that when a person of advanced years and infirm, mentally and physically, has made his attorney the principal beneficiary, and it appears that this was contrary to previously expressed testamentary intention, that the attorney was the draftsman of the will and took an

active part in procuring its execution, and that the testator acted without independent advice, the burden is imposed upon the attorney of satisfying the court that the will was the free, untrammeled, intelligent expression of the intention of the testator.

In proceedings for the probate of a will the executor who presented the will for probate, and who was the principal legatee, after proving the loss of a former will, drawn by him, and executed by the testatrix, was permitted to testify to its contents, and was also allowed, after testifying that he had an interview with the decedent, to testify that a memorandum produced was made by him at the house of the testatrix, at the time of the interview, and that from it another prior will was drawn by him. *Held* error; that the evidence was " concerning a personal transaction or communication between the witness and the deceased" within the meaning of section 829 of the Code of Civil Procedure.

The probate was opposed by one who was a stranger in blood to the testatrix, but who claimed as a legatee under former wills executed by her. *Held,* that he was a person deriving an interest under the deceased within the meaning of said section.

Under the provision of the Code of Civil Procedure (§ 2545), declaring that no decree or order of a surrogate shall be reversed for error in admitting or rejecting evidence " unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby," when incompetent evidence has been received, or competent evidence rejected, and it appears that the evidence was important and material, and the court of review cannot say that, notwithstanding the error, the judgment is right, or, if it entertains a reasonable doubt, a case is presented where the party excepting was " necessarily prejudiced," and the error requires a reversal of the judgment.

(Argued March 19, 1884 ; decided April 15, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 23, 1883, which affirmed a decree of the surrogate of Ulster county, admitting to probate the will of Eliza M. Smith, deceased.

The proponent, William Lawton, was the chief beneficiary under the will of September 13, 1880, propounded for probate. He was a lawyer, he drew the will, and had been the legal adviser of the decedent, for whom he had drawn several wills prior to the one in question. The will was drawn and executed on the day of its date, during the last sickness of the testatrix, who died five days thereafter. She had no heirs or

next of kin, and at the time of her death was more than seventy-five years of age. The probate of the will was contested by Eliza J. Hamilton on the ground of the incapacity of the testatrix and of fraud and undue influence. The contestant was a legatee in three wills executed by the testatrix, the first dated February 13, 1878, the second July 13, 1880, and the third July 18, 1880. By the first and second wills she was made residuary legatee, by the third she was given a legacy of $3,000, and by the same will other legacies to the amount of $2,500, the proponent was made residuary legatee. The wills of July 13, 1880, and July 18, 1880, were drawn by the proponent. By the will in controversy the testatrix gave to St. John's Church, Kingston, a legacy of $500; to Mrs. Josephine Peters, $500; to George L. Lawton, the son of proponent, $2,000; to Walter S. Hamilton, her stock in the Lake Shore railroad; and to the proponent (whom she made executor) the residue of her estate.

The contestant on the hearing, for the purpose of establishing the incapacity of the testatrix to make the will in question, called two physicians who had attended the testatrix professionally during her last sickness, who were permitted, against the objection of the proponent, to express an opinion in respect to the mental capacity of the testatrix, founded upon their observation of the testatrix during her illness, and also to state facts of which they became cognizant in their professional capacity, tending to prove that the testatrix was *non compos* and incapable of making a will. There was other evidence bearing in the same direction.

The evidence on the part of the contestant was controverted by evidence on the part of the proponent, tending to sustain the claim on his part that the testatrix, when the will was made, was of sound and disposing mind and memory. The charge of undue influence rested for its support upon the relation between the testatrix and the proponent, the change of testamentary intention indicated by a comparison of the will in controversy with the prior wills, and various facts, declarations and circumstances proved on the part of the contestants.

The proponent, to rebut the charge of undue influence, produced a will of the decedent, drawn by her, and executed in 1870, by which she gave to the proponent and his family substantially her whole estate ; also a will dated August 10, 1880, but which in part was drawn and executed September 10, 1880, containing substantially the same provisions as the will in question, but which, having been witnessed by the proponent, the principal beneficiary, was superseded by the new will to obviate this objection.

The proponent was permitted, against the objection of the contestant, to testify to the contents of a last will drawn by him and executed by the decedent, about twenty years prior to her death, whereby she gave her estate to a child of proponent, now deceased.   He was also permitted to testify, under objection, that the will of September 10, 1880, was drawn from a memorandum made by him September 10, 1880, at the house where decedent resided, with a view to the will executed on that day.   The objection to this and the evidence as to the contents of the last will was put upon the ground that the proponent was an incompetent witness to prove the facts under section 829 of the Code.   There were other objections of the same character to other evidence given by the proponent.

*John E. Van Etten* for appellant.   Opinions of subscribing witnesses are estimated according to the means of information possessed by them. (*Swenarton* v. *Hancock*, 9 Abb. N. C. 338, 340, 343 ; *Platt* v. *Platt*, 2 T. & C. 40.)   The religious waverings of the testatrix indicated aberration of mind. (*Lansing* v. *Russell*, 13 Barb. 524.)   A party who offers an instrument for probate as a will, especially when prepared by himself, must show satisfactorily that it is the will of the alleged testator, and upon this question he has the burden of proof. (*Rollwagen* v. *Rollwagen*, 63 N. Y. 517, 518, 519 ; *Hegarty* v. *King*, L. R., 5 Ireland, 249 ; *Childrens, etc.*, v. *Loveridge*, 70 N. Y. 309 ; *Maing* v. *Silter*, 3 Bradf. 133 ; Abbott's Trial Evidence, 114 ; *Delafield* v. *Parish*, 25 N. Y. 9, 30, 34 ; Redfield's Am. Cases on Law of Wills, 4 ; *Kingsley* v. *Blanchard*,

66 Barb. 317; *Lake* v. *Raney*, 33 id. 49; *Platt* v. *Platt*, 2
T. & C. 25, 40; *Tyler* v. *Gardiner*, 35 N. Y. 594; *McLaugh-
lin* v. *McDevitt*, 63 id. 213; *Rollwagen* v. *Rollwagen*, id.
517, 518; *Nesbit* v. *Lockman*, 34 id. 167; *Sears* v. *Shafer*, 6
id. 268; *Lansing* v. *Russell*, 13 Barb. 510; *Whitehead* v.
*Kennedy*, 7 Hun, 230; *Sears* v. *Shafer*, 1 Barb. 408; *Brock*
v. *Barns*, 40 id. 521; *Vreeland* v. *McClelland*, 1 Bradf. Surr.
393; *Platt* v. *Platt*, 2 T. & C. 25, 40; *Swenarton* v. *Hancock*,
9 Abb. N. C. 327.)     Undue influence may be found
when any relation of mutual confidence exists between the
parties, such as attorney and client. (*Nesbit* v. *Lockman*, 34
N. Y. 167; *Sears* v. *Shafer*, 6 id. 268; *Whitehead* v. *Winter-
ton*, 7 Hun, 230; *Brock* v. *Barns*, 40 Barb. 521; *Huguenin*
v. *Basely*, 14 Ves. 273; *Ford* v. *Hennessy*, 70 Mo. 580.)     A
sudden change — a sudden revolution of intention — in a will,
originating with the chief beneficiary, calls for close scrutiny,
and direct evidence of fraud and undue influence is unnecessary.
(*Swenarton* v. *Hancock*, 9 Abb. N. C. 327, 362, 363; *Lan-
sing* v. *Russell*, 13 Barb. 522; *Tyler* v. *Gardiner*, 35 N. Y.
559; *Delafield* v. *Parish*, 25 id. 35; *McLaughlin* v. *Mc-
Devitt*, 63 id. 213; *Rollwagen* v. *Rollwagen*, id. 504.)
The surrogate erred in discarding the testimony of the physi-
cians. (*Pierson* v. *People*, 79 N. Y. 424; *Edington* v. *Ætna
L. Ins. Co.*, 77 id. 564, 569; *Staunton* v. *Parker*, 10 Hun, 55;
*Rollwagen* v. *Rollwagen*, 63 N. Y. 510; *Swenarton* v. *Han-
cock*, 9 Abb. N. C. 351; *Grattan* v. *Met. L. Ins. Co.*, 80 N.
Y. 281; *Steele* v. *Ward*, 30 Hun, 562; 77 N. Y. 564; 19
Hun, 555; *Templeton* v. *People*, 3 id. 357.)     The true test of
testamentary capacity is the competency of the testator to
understand and comprehend the act in relation to his property
and the objects of his bounty. (*Delafield* v. *Parish*, 25 N.
Y. 29; *Swenarton* v. *Hancock*, 9 Abb. N. C. 327.)     It
was error to allow the proponent to testify concerning per-
sonal transactions and communications between himself and
the deceased. (Code of Pro., § 829; *Pease* v. *Barnett*, 30
Hun, 525; *Steele* v. *Ward*, id. 555, 560.)     In an appeal from
a surrogate's decree upon the probate of a will, the hearing is

*de novo* in the appellate courts. (*Foote* v. *Beecher*, 78 N. Y.
158; *Clapp* v. *Fullerton*, 34 id. 190; *Children* v. *Loveridge*,
70 id. 409, 410.) The legal presumption of imposition, fraud
and undue influence arising from the relation of the parties,
and the age, infirmity, disease and incapacity of the testatrix,
not having been overthrown by affirmative evidence, but
strengthened thereby, probate should have been denied. (*Roll-
wagen* v. *Rollwagen*, 63 N. Y. 504; *Tyler* v. *Gardner*, 25 id.
581; *Swenarton* v. *Hancock*, 9 Abb. N. C. 326, 364; Jar-
man on Wills, 38; *Mowery* v. *Silber*, 2 Bradf. 133; *Foreman*
v. *Smith*, 7 Lans. 443.)

*J. Newton Fiero* for respondent. The determination of the
surrogate, as affirmed by the General Term, is conclusive and
final upon all questions of fact in the case and will not be
reviewed by this court. (*In re Probate Will of Higgins*, 18
Weekly Dig. 293; *Davis* v. *Clark*, 87 N. Y. 523; *In Matter
of Ross*, id. 514; *Marx* v. *McGlynn*, 88 id. 369.) Witnesses
may characterize as rational or irrational " the acts and declara-
tions to which they testify." (*Clapp* v. *Fullerton*, 34 N. Y.
190; *De Witt* v. *Barley*, 17 id. 347; Abbott's Trial Evidence,
118, note 3; *Delafield* v. *Parish*, 25 N. Y. 38; *Seamen's
Friend Soc.* v. *Hopper*, 33 id. 641; *Grattan* v. *Met. L. Ins.
Co.*, 80 id. 281; *Edington* v. *Mut. L. Ins. Co.*, 67 id.
185; *Snyder* v. *Sherman*, 11 Weekly Dig. 158; *S. C.*, 23 Hun,
139; *Foote* v. *Beecher*, 78 N. Y. 158; Taylor's Med. Jur.,
680; Redfield on Wills, 116, note 19; *Horn* v. *Pullman*, 72 N.
Y. 276; *Snyder* v. *Sherman*, 23 Hun, 141; 1 Redfield, 183.)
The evidence of Dr. Geo. C. Smith, as to the delirious condi-
tion of the decedent some time before the execution of the
will, presents the question as to the nature of that delirium and
as to whether it was continuous. (1 Redfield, 116; Ray's
Med. Jur. of Insanity, §§ 213, 218; *Brogden* v. *Brown*, 2
Addams, 441; *Evans* v. *Knight*, 1 id. 229; 1 Beck's Med.
Jur. 822.) A party seeking to avoid a will on the ground of
undue influence must show that the testator was subjected to
such influence as amounted to moral coercion. The fact that a

testatrix changed her mind in substantial respects is not conclusive, and does not show she was incompetent or under restraint. (*Dougall* v. *Gates*, 14 Weekly Dig. 501; *Coit* v. *Patchen*, 77 N. Y. 533; *Horn* v. *Pullman*, 72 id. 269; *Post* v. *Mason*, 91 id. 549; 23 Alb. L. J. 227; *Marx* v. *McGlynn*, 88 N. Y. 357; *Children's Aid Soc.* v. *Loveridge*, 70 id. 389, 393, 409.) A case on appeal, like the present one, is to be determined on the competent evidence submitted without considering such as may be incompetent. (*Snyder* v. *Sherman*, 23 Hun, 139; *Brick* v. *Brick*, 66 N. Y. 144; *Foote* v. *Beecher*, 78 id. 155; *Hewlett* v. *Wood*, 55 id. 634; *Matter of Ross*, 87 id. 520; *Heir* v. *Grant*, 47 id. 278; 90 id. 659; Code of Civ. Pro., § 2545; *Copeland* v. *Van Alstyne*, 9 Weekly Dig. 407; *Matter of Ross*, 87 N. Y. 521; *Post* v. *Mason*, 91 id. 549.)

Andrews, J. Undue influence, which is a species of fraud, when relied upon to annul a transaction *inter partes*, or a testamentary disposition, must be proved, and cannot be presumed. But the relation in which the parties to a transaction stand to each other, is often a material circumstance and may of itself in some cases be sufficient to raise a presumption of its existence. Transactions between guardian and ward, attorney and client, trustee and *cestui que trust*, or persons one of whom is dependent upon and subject to the control of the other, are illustrations of this doctrine. Dealings between parties thus situated, resulting in a benefit conferred upon, or an advantage gained by the one holding the dominating situation, naturally excite suspicion, and when the situation is shown, then there is cast upon the party claiming the benefit or advantage, the burden of relieving himself from the suspicion thus engendered, and of showing either by direct proof or by circumstances that the transaction was free from fraud or undue influence, and that the other party acted without restraint and under no coercion, or any pressure direct or indirect, of the party benefited. This rule does not proceed upon a presumption of the invalidity of the particular transaction, without proof. The proof is

made in the first instance when the relation and the personal intervention of the party claiming the benefit, is shown. The law is not so impracticable as to refuse to take notice of the influence of greed and selfishness upon human conduct, and in the case supposed it wisely interposes by adjusting the quality and measure of proof to the circumstances, to protect the weaker party and, as far as may be, to make it certain that trust and confidence have not been perverted or abused. (*Nesbit* v. *Lockman*, 34 N. Y. 167; *Cowee* v. *Cornell*, 75 id. 91; 31 Am. Rep. 428; *Marx* v. *McGlynn*, 88 N. Y. 357.)

The rule to which we have adverted seems however, to be confined to cases of contracts or gifts *inter vivos*, and does not apply in all its strictness at least, to gifts by will. It has been held that the fact that the beneficiary was the guardian, attorney, or trustee of the decedent, does not alone create a presumption against a testamentary gift, or that it was procured by undue influence. (*Coffin* v. *Coffin*, 23 N. Y. 9; *Post* v. *Mason*, 91 id. 539; 43 Am. Rep. 689; *Parfitt* v. *Lawless*, L. R., 2 Pro. & Div. 462.) The mere fact therefore that the proponent was the attorney of the testatrix did not, according to the authorities cited, create a presumption against the validity of the legacy given by her will. But taking all the circumstances together — the fiduciary relation, the change of testamentary intention, the age, and mental and physical condition of the decedent, the fact that the proponent was the draftsman and principal beneficiary under the will and took an active part in procuring its execution, and that the testatrix acted without independent advice, a case was made which required explanation, and which imposed upon the proponent the burden of satisfying the court that the will was the free, untrammeled and intelligent expression of the wishes and intention of the testatrix. (See note to *Huguenin* v. *Baseley*, 2 W. & T. Leading Cas. in Eq. 1156; Redfield on Wills, 515, and cases cited.)

The surrogate reached a conclusion adverse to the contestant upon both grounds upon which the validity of the will was questioned. He found that the testatrix had testamentary capacity and that the will was not procured by any fraud or undue

influence. We think there was evidence to support the con-
clusion of the surrogate upon both points. But upon neither
was the case free from doubt. We do not intend to enter into
a discussion of the facts. We have reached the conclusion that
the judgment oughtɔto be reversed for errors in the admission
of evidence on the question of undue influence, which was
calculated to, and which we cannot say may not have had a
material influence upon the determination of the surrogate.

The proponent was examined as a witness in his own behalf.
He was permitted to testify to the contents of a lost will of the
testatrix, drawn by the proponent and executed by her twenty
years before her death, by which she gave her estate to a child
of the proponent, since deceased. The existence and execution
of this will, its loss, and its contents, were proved by his testi-
mony alone. The proponent was also allowed to testify that a
memorandum produced was made by him on the 10th of Sep-
tember, 1880, three days before the execution of the will in
question, at the house of Mrs. Peters, where the testatrix
resided, and that the will drawn by him on that day (but dated
August 10, 1880), was drawn from the memorandum. The will
in question was substantially a transcript of the will of Sep-
tember 10th. The proponent was the draftsman of this will
also, and he procured it to be executed after his attention
had been called to the point, whether being a subscribing wit-
ness to the will of September 10th, he was competent to take
under its provisions. The contestant objected to the propo-
nent's being allowed to testify to the contents of the lost will,
and also in respect to the memorandum of September 10th, and
to the fact that the first will was drawn therefrom, on the
ground that the evidence related to personal transactions and
communications between the witness and the decedent as to
which he was incompetent to testify under section 829 of the
Code. The surrogate overruled the objection and admitted
the evidence, and the contestant excepted.

We think the objection as to both branches of the evidence
was well taken. The drawing of the lost will by the proponent
and its execution by the testatrix, presumptively involved a

personal transaction between them. The instructions must
have been obtained from the testatrix by the witness directly
or through an intermediary. But the circumstances strengthen
the natural presumption (which is not excluded by any affirm-
ative proof), that it was drawn from instructions personally
communicated by the testatrix to the witness. They resided
in the same place ; the testatrix was a friend and frequent
visitor at the house of the proponent, and his child was the
principal beneficiary under the will. The witness derived his
knowledge of the contents of the will from his relation to the
transaction and to the testatrix. We think there can be no
doubt that he was precluded by section 829, from testifying to
the contents of the will. It was evidence " concerning a per-
sonal transaction or communication between the witness and
the deceased."

The evidence in respect to the memorandum, and that the
will of September 10, 1880, was drawn from it, was also clearly
in contravention of section 829. The proponent testified that
he was sent for by the testatrix on the evening of the 9th of
September, and that he went to see her on the morning of the
10th and had an interview with her. The inference is irre-
sistible, although the fact is not expressly proved, that the
memorandum was made by proponent at that interview and
contained her instructions for the will of the 10th of Septem-
ber. The evidence of the proponent that he made the memo-
randum and drew the will therefrom, was equivalent to permit-
ting him to testify that the will was drawn from and in pur-
suance of instructions given him by the testatrix, and was
plainly evidence concerning a personal transaction or commu-
nication between them.

It is obvious that the testimony of the proponent as to the
contents of the lost will and in respect to the memorandum,
bear directly and with great force upon the issue of undue in-
fluence. The evidence in respect to the memorandum was
especially important. It was cogent proof that the testatrix
understood the contents of the will of September 10th, of which
the will of September 13th was substantially a republication ;

that her intention to give her property to the proponent was deliberately formed and that the will in question was drawn in conformity with her instructions. While the existence of undue influence is not conclusively repelled by proof that the contents of an instrument contested on that ground, were understood by the party executing it, it is nevertheless a material inquiry, and the fact that the instrument was the conscious intelligent act of the person signing it, is always of great weight upon the issue.

The doubt in respect to the application of section 829 of the Code in this case arises out of the peculiar relations of the proponent and contestant to each other, and to the estate of the decedent. The contest, in substance, is between strangers in blood to the testatrix, claiming her property in hostility to each other under different wills. Section 829 prohibits the examination of a party to an action or special proceeding, in his own behalf, against the executor, etc., of a deceased person, " or a person deriving his title or interest from, through, or under a deceased person." We think the contestant was a person deriving an interest under the deceased, within the meaning of this section. It is true the contestant's interest was not fixed or certain. If the will propounded for probate is valid, she has no interest, and if it should be set aside, it does not follow that the will under which she claims will be established. But the probate of a will is a special proceeding (Code, § 3334). The contestant, by appearing to contest the probate, became a party thereto (§ 2617). The will propounded was an obstruction to any claim she may have under the prior wills. Her interest, though contingent and uncertain, whatever it was, was derived under the deceased. Her position, though not precisely analogous, is similar to that of heirs or next of kin contesting the will of their ancestor, and it can scarcely be doubted that they would be within the protection of the section.

The only remaining question relates to the construction and application of the last clause of section 2545 of the Code, which declares that no decree or order of a surrogate shall be reversed for any error in admitting or rejecting evidence, " unless it

appears to the appellate court that the exceptant was necessarily prejudiced thereby." Prior to the enactment of this section the rule was settled, in analogy to the rule governing appeals in equity, that the admission of improper evidence in a proceeding before a surrogate for the probate of a will, was not a ground for reversing his decree if it appeared on the whole case that the decree was right. (*Brick* v. *Brick*, 66 N. Y. 144, and cases cited.) In other words the appellate court disregarded errors in the admission or rejection of evidence in such cases, which, in its judgment, did not affect the substantial rights of the parties. Section 2545 was probably intended to incorporate into the statute the pre-existing rule administered by the courts. The section could not have intended to prescribe that no decree of a surrogate should be reversed for errors in admitting or rejecting evidence, unless it appeared to the appellate court in the one case that the evidence erroneously admitted furnished the only foundation for the judgment, or in the other that the rejected evidence, if it had been admitted, would have conclusively entitled the appellant to a decree in his favor. It is the general rule, alike of reason and of law, that litigants may present to the court all relevant and competent evidence bearing upon the issues between them, and that incompetent and irrelevant evidence shall be excluded, so that the case shall be heard and decided upon the competent and legal proof. (*Schenck* v. *Dart*, 22 N. Y. 420.) The admission of incompetent evidence was before the Code presumptively injurious. The section in question may have changed this presumption. Under this section, when the court of review finds that incompetent evidence has been received or competent evidence rejected, it then becomes its duty to determine whether the error prejudiced the party against whom it was committed. If it appears to the court that it did not, then its duty is plain. If, on the other hand, the evidence erroneously admitted or rejected was important and material, and the court cannot say, that notwithstanding the error, the judgment is right, or if it entertains a reasonable doubt upon the subject, then we conceive a case is presented where the party excepting was necessarily prejudiced

within this section. He was deprived of the opportunity of having his case decided upon the competent and material facts, and it is not a just answer to say that on a re-trial the same conclusion may possibly be reached. Within the rule thus stated, the admission of the testimony adverted to requires the reversal of the judgment.

The judgment of the General Term and of the surrogate is therefore reversed.

All concur, except MILLER, J., not voting.

Judgment reversed.