## *In re* JACOTT.

*(Supreme Court, General Term, Second Department.*  June 25, 1888.)

WILLS—PROBATE AND CONTEST—ISSUES FOR JURY.
    A testator, sick with a painful disease, made a will, within two months of his death, giving the bulk of his property to the church of which he was a member, and making its pastor and another, both of whom had repeatedly urged him to make his will, residuary legatees, requesting them to give out of the remainder such articles or sums as he might request in writing.  The evidence as to his capacity was conflicting, and there was evidence that the residuary clause was intended to cover only a few articles of furniture, and was inserted only at the suggestion of the lawyer.  He was an alien, and it did not appear that he understood that, under the laws of New York, (Laws 1848, c. 319, § 6,) in case of his death within two months,

the charitable bequest would become void, and pass to the residuary legatees. *Held*, that the probate should be set aside, and issues framed for a jury on the question of undue influence.[1]

Appeal from surrogate's court; ABRAHAM LOTT, Surrogate.

This is an appeal from a decree admitting to probate the will of George R. Jacott, deceased, over the objections of Emma Benrimo, cousin and heir of the testator, and declaring void a clause in the will bequeathing a legacy to the Calvary Protestant Episcopal Church, because the will was made within two months of the testator's death. Laws 1848, c. 319, for the incorporation of benevolent, charitable, scientific, and missionary societies, provides, in section 6, that "no person leaving a wife or child or parent, shall devise or bequeath to such institution or corporation more than one-fourth of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of such one-fourth, and no such devise or bequest shall be valid, in any will which shall not have been made and executed at least two months before the death of the testator." Emma Benrimo, the contestant, appeals.

Argued before BARNARD, P. J., and PRATT, J.

*Albert Bach*, for appellant. *Edwards & Odell*, for respondents.

BARNARD, P. J. This appears to be a proper case for a jury. The testator was about 60 years old, and had no nearer kinswoman than a first cousin. He was an alien. He lived in apartments hired of George N. Edwards. He became sick of a dangerous and painful disease. He had been constantly growing worse for some weeks before the 20th of November, 1887, when the paper propounded for probate was executed. The deceased was an attendant at the Protestant Episcopal Church in Williamsburgh, and a member of the church. George W. Edwards had repeatedly asked the deceased to make his will. So had also Mr. Marshall, one of the witnesses. So had the pastor of the church. George W. Edwards procured the lawyer who drew the will, and who was his nephew. None of these persons had any apparent interest in the subject. The testator had some $16,000. By the will $3,000 is given to his cousin's son, and, after a few small legacies, a sum not exceeding $10,000 is given to the church to pay off mortgages. Marshall was an attendant at the church in question, and Marshall and the pastor of the church had consulted together as to the execution of a will by the deceased. The will by the residuary clause bestows all the unbequeathed property to George W. Edwards and the pastor of the church, who were the executors of the will. Assuming the formal execution of the will, and the capacity of the testator, as to which fact the evidence is very conflicting, the proof shows an undue influence in its procurement. The testator was known to be in a fatal sickness. There was no likelihood of his living the length of time which would permit a gift to the church, and the residuary clause is as follows: "*Fourth.* I give and bequeath all the rest, residue, and remainder of my property, whatsoever or wheresoever situated, unto my friends George W. Edwards and Rev. Cornelius Twing, share and share alike, and I request them to give, out of said residue and remainder, such article or sum to such persons or in such directions as by a paper signed by me, or left or to be left with my will, I may request." The will was not read to the testator. In respect to the residuary clause the testimony of Walter Edwards, who drew the will, is as follows: "I asked him if this exhausted his property. He said he thought about all, nearly. I said to him that I always deemed it well to provide a residuary clause, so that there might be no portion of one's estate as to which he died intestate, and then he directed me to draw, after a great deal

[1] On the subject of undue influence as affecting the validity of a will, see In re Glockner's Will, *ante*, 97, and cases cited in note.

of hesitation, the residuary clause as it is. Also I did suggest to Mr. Jacott, as affording him a means, if he had confidence in his residuary legatees, even after his will was executed, the right of making any small gift out of the residue that he may desire." This is the only direct evidence as to the clause in question, and it will be seen the suggestion about a small gift does not fit the scope of the residuary clause itself. George W. Edwards testifies that Walter Edwards, who drew the will, told him "that there was a residuary clause in which there was some property,—the furniture, etc.,—to be disposed of by us, as he might request us. That was the day the will was executed." The conversation of testator after the will points only to a few articles of furniture. No suggestion was made as to making.Edwards and Twing the absolute residuary legatees until the person who drew the will suggested the making of a residue clause; and then the record shows that "he directed me to give the residue of his estate to these gentlemen." There was no inquiry upon the part of testator; no suggestion by the drawer of the will. No explanation of the reason for a clause, which was almost certain to carry the greater part of the estate under it, was either asked or given. The whole narrative is unnatural. Under the circumstances of this case something more than proof of a formal execution is necessary. There must be shown facts which establish that the paper proposed was an intelligent expression of the testator's will. *Marx* v. *McGlynn,* 88 N. Y. 357; *In re Smith,* 95 N. Y. 516. It is more natural to suppose that the residue clause was contrived and designed to save the legacy in case of the death of testator within two months, and there is no proof, indeed, every inference is to the contrary, that he was told or knew of the effect of his death within some two months upon the church gift, and that, to meet this contingency, an absolute gift was designed by the testator to two strangers. I believe the testator was ignorant of the effect of the clause, and therefore the instrument is not an expression of his will. The judgment should therefore be reversed, and issues framed for trial by a jury of Kings county. The question of costs to be settled after the trial of the issue.

PRATT, J., concurs.