In the Matter of the Probate of a Paper Writing Alleged to be the
Last Will and Testament of WILLIAM A. RINTELEN, Deceased.

HARRY OVERINGTON, Appellant; ELIZABETH RINTELEN and LENA
RINTELEN, as General Guardian of JOSEPH RINTELEN, an Infant,
Respondents.

*Will — proof required to admit it to probate, where the attorney who prepares it and
attends to its execution is a beneficiary thereunder.*

Upon a proceeding for the probate of a will it appeared that the decedent had no
children; that his next of kin were a sister and an infant child of a deceased
brother; that the decedent was addicted to drink, and that the proponent of
the will, who, by the terms thereof, was appointed sole executor and given one-
half of the testator's estate, was a lawyer to whom the decedent had given a
sum of money which the proponent was accustomed to dole out to the dece-
dent from day to day in sums sufficient to gratify his appetite for drink and to
provide the means of existence. The will was drafted by one of the propo-
nent's clerks and was executed in the proponent's office. The only persons
present at the time of the execution were the decedent, the proponent and the
two subscribing witnesses. One of the subscribing witnesses was a clerk of
the proponent and the other a clothing dealer from whom the decedent was in
the habit of purchasing clothes upon the order of the proponent.

The subscribing witnesses testified to the execution of the will in conformity
with the requirements of the statute. Evidence was also given tending to
show that the decedent was sober and of sound mind when he executed the
will. There was no evidence of the testamentary intention of the decedent
prior to the execution of the will or that he gave any instructions for its
preparation or had any independent advice upon the subject.

*Held,* that the relations between the decedent and the proponent were such as to
impose upon the proponent the burden of proving by evidence other than that

of the formal execution of the instrument that it was the free, untrammeled and intelligent expression of the wishes and intention of the testator;

That no such affirmative evidence had been given, and that the surrogate was justified in refusing to admit the will to probate.

APPEAL by Harry Overington, the executor nominated in, and a legatee under, a paper purporting to be the last will and testament of William A. Rintelen, deceased, from a decree of the Surrogate's Court of New York county, entered in said Surrogate's Court on the 27th day of March, 1902, refusing to admit said paper to probate.

*Francis B. Chedsey*, for the appellant.

*Gormly J. Sproull*, for the respondent general guardian.

INGRAHAM, J. :

The proponent was the executor of what purported to be the last will and testament of the decedent and he applied to have the instrument probated. The deceased had no children, his next of kin being a sister and an infant child of a deceased brother. The next of kin opposed the probate, alleging that the testator had not testamentary capacity ; that the will offered for probate was not the free act and deed of the deceased, but was procured from him by undue influence, and that the said paper writing was not subscribed, published and attested as and for the last will and testament of the decedent in conformity to statute. (2 R. S. 63, § 40.) One of the subscribing witnesses to the will, a clerk of the proponent, testified that the will was executed in the presence of the proponent, who had acted as an attorney and agent for the deceased for some time before his death ; that the proponent was present at the time of the execution of the will ; that the will was read over to the deceased by the proponent and the deceased held the paper in the position that a person would hold it when reading it ; that after that was done he sat down and signed the will and then declared it to be his last will ; that the attestation clause was read over to him by the proponent and the deceased asked the two witnesses to sign ; that at the time the testator signed the will he was not intoxicated ; that his mental condition was very good indeed, and he was sober and of sound mind when he signed the will ; that

there had been some $1,500 left with the proponent, who was to pay
it out when the deceased came for it; that the deceased came in
almost every morning to get some money on account of that princi-
pal; that he was always quarreling with his sister, one of the con-
testants; that the instrument offered for probate was in the hand-
writing of one of proponent's clerks.   The other subscribing witness
testified that the proponent read some parts of the will over and then
the deceased signed it, and after he had signed it the proponent asked
him if that was his will, to which the deceased replied " yes," and
then asked the witnesses to sign the will; that he said this after the
proponent had asked him if this was his will; that the deceased was
in the habit of getting drunk and of purchasing clothes from the
witness, who was a dealer in clothing, upon the order of the propo-
nent, the clothes being charged to proponent and paid for by him;
that when the deceased executed this instrument he did not say over
ten words; all that he said was " yes," and the request to the witnesses
to sign; that the whole interview did not last over fifteen minutes.
These two witnesses had been previously examined before the sur-
rogate's clerk, and their testimony varied in some particulars, but
they testified to the substantial facts required by the statute.   Upon
the examination of these two witnesses the proponent rested.   Evi-
dence was then introduced by the contestants which tended to show
that the deceased lived in a cheap lodging house, paying a dollar a
week for his room; that he was drunk almost every night, so that
the porter had to put him to bed.   There was also evidence tending
to show that when he was sober he seemed to understand himself
and what he was about, and there was no evidence of a lack of
testamentary capacity, or that the making of this will was sug-
gested to him by anybody.   The learned surrogate in his opinion
based his decision upon the personal relations that existed between
the deceased and the proponent, and held that the circumstances
were such as to make a case which required explanation, and
which imposed upon the proponent the burden of satisfying the
court that the will was the free, untrammeled and intelligent
expression of the will of the testator; that this explanation had
not been furnished and the burden of proof was not sustained.
The only question on this appeal is whether the relation that
existed between the deceased and the proponent, the executor and

principal beneficiary, and the facts surrounding the execution of the instrument were such as to cast upon him the burden of proving that the decedent understood the situation, intended to make the disposition of the property expressed in the will freely and without the improper influence of the principal beneficiary at whose instance the will was executed and expressed such intention by the execution of the instrument. That the proponent acted in a peculiarly intimate and confidential relation with the deceased is clear. He had in his possession an amount of money which he gave to the deceased in small sums necessary for the gratification of his appetite for drink and for his support from day to day. It is not stated in what form the balance of the deceased's property was invested, but the relation that existed between him and proponent placed the latter in a situation that gave him peculiar power to impose his will upon a man who seems to have had no association with his relatives. The proponent was not only the deceased's attorney, but also his banker and general agent from whom he received the means of living from day to day. When this instrument was executed the decedent was in the office of his attorney and confidential agent, the only ones present being in the employ of his attorney until the clothing dealer was sent for as a witness. There was nothing said in the presence of this witness to indicate that the decedent really had an intention of making such a disposition of his property, the conversation in the presence of this witness being simply answers to the proponent's questions. The decedent, so far as appears, had no independent advice as to the propriety of making such a disposition of his property; had not before expressed an intention of making such a disposition, and it does not expressly appear that the portion of the will which made his attorney a legatee was read over in the presence of the only witness who was not directly connected with the principal beneficiary. The will appointed the attorney and agent sole executor and left him one-half of the testator's property. In *Matter of Smith* (95 N. Y. 516) this question was discussed by Judge Andrews in delivering the opinion of the Court of Appeals, and the principle there established we think is conclusive in this case. There the proponent was the chief legatee under the will propounded for probate ; was a lawyer who drew the will; was

the legal adviser of the decedent and was the residuary legatee. Judge ANDREWS says : " Undue influence, which is a species of fraud, when relied upon to annul a transaction *inter partes*, or a testamentary disposition, must be proved and cannot be presumed. But the relation in which the parties to a transaction stand to each other is often a material circumstance and may of itself in some cases be sufficient to raise a presumption of its existence. Transactions between guardian and ward, attorney and client, trustee and *cestui que trust* or persons, one of whom is dependent upon and subject to the control of the other, are illustrations of this doctrine. Dealings between parties thus situated, resulting in a benefit conferred upon, or an advantage gained by the one holding the dominating situation, naturally excite suspicion, and when the situation is shown, then there is cast upon the party claiming the benefit or advantage, the burden of relieving himself from the suspicion thus engendered, and of showing either by direct proof or by circumstances that the transaction was free from fraud or undue influence, and that the other party acted without restraint and under no coercion, or any pressure, direct or indirect, of the party benefited. * * * The rule to which we have adverted seems, however, to be confined to cases of contracts or gifts *inter vivos*, and does not apply in all its strictness, at least, to gifts by will. * * * The mere fact, therefore, that the proponent was the attorney of the testatrix did not, according to the authorities cited, create a presumption against the validity of the legacy given by her will. But taking all the circumstances together — the fiduciary relation, the change of testamentary intention, the age, and mental and physical condition of the decedent, the fact that the proponent was the draftsman and principal beneficiary under the will and took an active part in procuring its execution, and that the testatrix acted without independent advice, a case was made which required explanation, and which imposed upon the proponent the burden of satisfying the court that the will was the free, untrammeled and intelligent expression of the wishes and intention of the testatrix." In this case all the facts adverted to by the learned judge were present, except the change of testamentary intention, there being here no evidence of the intention of the decedent prior to the execution of the instrument offered for probate ; and in this case we have the additional fact that the decedent

had been receiving from the proponent, from day to day, the money necessary for the gratification of his appetite and means of existence, placing the deceased in a position of dependence upon the proponent, and there is no evidence that the deceased gave instructions to prepare a will to any one. The entire absence of independent advice, or of instructions as to how the will should be prepared, or of knowledge of its contents, except so far as the instrument itself or some part of it was read over in his presence before its execution, and the absence of the communication of an intention to make a will to those who would be the natural objects of his bounty, are circumstances which are most important in considering the effect to be given to the proof of the actual execution of the instrument, and we think bring the case clearly within that class where there is imposed upon the proponent the burden of proving by evidence other than that of the formal execution of the instrument that it was the free, untrammeled and intelligent expression of the wishes and intention of the decedent. That burden being imposed upon the proponent, the case is bare of evidence that would justify a finding, aside from the formal execution of the instrument, that the decedent ever intended to make the disposition of the property expressed by the instrument; and without such affirmative evidence we think the learned surrogate was entirely correct in refusing to admit the will to probate. As was said by Judge ANDREWS in *Matter of Smith (supra)*: " The law is not so impracticable as to refuse to take notice of the influence of greed and selfishness upon human conduct, and in the case supposed it wisely interposes by adjusting the quality and measure of proof to the circumstances, to protect the weaker party and, as far as may be, to make it certain that trust and confidence have not been perverted or abused." In cases where a testamentary disposition is made of which those interested in the decedent's property have no knowledge until after his death, and when his lips are sealed so that if imposition has been practiced upon him there can be no remedy, the enforcement of this rule is essential for the protection of those who are powerless to protect themselves. If attorneys who prepare wills from which they derive substantial benefit allow them to be executed without insisting upon the testator having independent advice so that proof of his intention is available, they must take the consequence if their motives and acts are

questioned and instruments which give such advantage are refused probate because the actual free and untrammeled intention of the decedent is not proved. We think that upon the facts as they appear in this case the learned surrogate correctly determined that the proponent had not sustained the burden of proof imposed upon him and correctly refused to probate the instrument.

The decree appealed from should, therefore, be affirmed, with costs.

VAN BRUNT, P. J., PATTERSON, HATCH and LAUGHLIN, JJ., concurred.

Decree affirmed, with costs.