In the Matter of the Petition of GRACE B. KIBBE for the Probate of the Alleged Last Will and Testament of ADDIE M. BUNDY, Deceased.

GRACE B. KIBBE, Appellant, Respondent; HERMAN B. BUNDY and Another, Respondents, Appellants.

Third Department, July 2, 1926.

Wills — execution — testatrix was mentally competent — testatrix bequeathed principal part of estate to wife of attorney who drew her will — testatrix was not relative of legatee but lived at attorney's home during last illness — no undue influence shown.

In proceedings to probate a will which was contested on the ground of mental incompetency of the testatrix, and that the will was the result of undue influence, the evidence of mental incompetency is very slight and the action of the surrogate in determining that the testatrix was competent will not be reviewed,

Third Department, July, 1926.                    [Vol. 217

The testatrix willed the principal part of her estate to the wife of the attorney who drew her will, and at the time the will was drawn and some time prior thereto the testatrix lived at the home of the principal legatee and was there at the time of her death. While the relationship of the testatrix to the principal legatee and her husband demanded an explanation on the part of the principal legatee, the evidence clearly establishes that neither the principal legatee nor her husband exercised any undue influence over the testatrix and that at all times the testatrix was at liberty to obtain and had opportunity to obtain independent advice as to the disposition of her property.

APPEAL by Grace B. Kibbe from a decree of the Surrogate's Court of the county of Delaware, entered in the office of said Surrogate's Court on the 8th day of March, 1926, denying probate of the will of Addie M. Bundy on the ground that said will was procured by improper and undue influence of said appellant.

Appeal by Herman B. Bundy and another from that portion of the decree which adjudges and decrees that the deceased at the time of the execution of the alleged last will and testament was of testamentary capacity and that said will was signed and published in accordance with section 21 of the Decedent Estate Law.

*Herbert C. Kibbe* [*Edmund B. Jenks* of counsel], for the appellant, respondent, Grace B. Kibbe.

*Lewis F. Raymond,* for the respondent, appellant, Herman B. Bundy.

*Arthur F. Curtis,* for the respondent, appellant, Luther L. Sornberger, as administrator, etc., of Edward L. Bundy, deceased.

McCANN, J. Addie M. Bundy, the testatrix, was at the time of making the will above referred to, a woman about sixty years of age, and a resident of the town of Masonville, Delaware county, N. Y., and resided on a farm which had been owned by her and her brother Edward L. Bundy, deceased, as tenants in common, and which had been occupied by them for many years prior to the death of Edward L. Bundy. Neither the testatrix nor her brother Edward had ever married. Edward L. Bundy died in 1922. Another brother, Herman B. Bundy, was a resident of Chicago. In the fall of 1924 the testatrix had an operation for a cancer at a hospital in the city of Binghamton, N. Y. She remained in that hospital for about three weeks and was then removed to another hospital at Sidney where she was for about four weeks when she went to the home of Mrs. Burnside of Sidney. On March 9, 1925, at her own request, she was taken to the home of the proponent, Grace B. Kibbe, where she resided and was cared for until April 12, 1925, when she died.

The will in question was executed on March 30, 1925. It was drawn by Herbert C. Kibbe, the husband of Grace B. Kibbe and

the attorney of record for the proponent, Grace B. Kibbe. The testatrix executed a will in 1921 by which she gave to her brother Edward the use of all of her property, provided, however, that if any remained after his death, it should go to Earl Bundy, a son of Herman B. Bundy, the contestant herein, and in case of his death, to Edward M. Bundy, a son of Earl P. Bundy and a grand nephew of the testatrix.

The testatrix gave as a reason for leaving none of her estate to her brother Herman B. Bundy the fact that there were judgments against him at the time and that his creditors would get anything she might leave to him. At the time of the making of the last will mentioned, Edward Bundy made a will with a similar provision in favor of the testatrix. After the death of said Edward Bundy in 1922, this testatrix procured the probate of his will, engaging the services of Herbert C. Kibbe, the attorney for the proponent in this proceeding. Thereafter the testatrix continued to live upon and operate the farm at Masonville. In November, 1924, about the time she went to the Binghamton hospital for her operation, she had Herbert C. Kibbe prepare a second will in which she gave to her brother Herman Bundy and to his wife Ella Bundy, to one Paul Bronson and to Grace B. Kibbe, the proponent herein, her entire property share and share alike. For some reason this will was never signed although it was witnessed. The last will and testament of the testatrix was made on March 30, 1925, and was denied probate and is now before this court on appeal from the decree denying probate of the same. It is claimed that the entire change of plan by the testatrix in the distribution of her property indicates that undue influence was brought to bear to procure such change. The said will gave certain small specific legacies to various parties, but the bulk of her property and estate was given to the proponent, Grace B. Kibbe. After the death of Edward L. Bundy, Earl P. Bundy, a nephew of the testatrix, attempted to induce the latter to convey to him all her property real and personal, also to assign a bank deposit, she to reserve the use of two rooms in the dwelling and to receive $100 per annum. This she refused to do. The testatrix stated to her friends that she was abused by Earl because of her refusal to agree to his desires in this matter. She finally paid Earl for his expenses and time lost by him in attending his uncle's funeral and paid him $100 to prevent him from contesting Edward L. Bundy's will. Her brother Herman B. Bundy stayed for a few weeks after the funeral and she finally paid his railroad fare and sent him home. These facts are related to show the feeling which existed between the testatrix, her brother and her nephew.

39

After this, she had a man named Bronson to assist her in managing the farm and she also depended for assistance on Mr. and Mrs. Kibbe, the latter being a friend of many years acquaintance but not a relative. Mrs. Kibbe went to the hospital with the testatrix and spent most of her time with her until she was moved to Sidney. While at Sidney in the hospital, Mrs. Kibbe stayed with her a considerable portion of the time. After the testatrix left the hospital she went to live with Mrs. Burnside. She frequently had Mr. and Mrs. Kibbe called on the telephone to assist her in her business affairs and otherwise and Mrs. Kibbe also called on the testatrix at the Burnside home. The testatrix continued to fail in health, and during the early part of March her condition became such that Mrs. Burnside felt she could no longer care for her and advised her of that fact and requested her to send for some other friend. On March 9, 1925, Mrs. Burnside, at the personal request of the testatrix, called Mrs. Kibbe and asked her to come and see the testatrix. She did so and consented to take Miss Bundy to her own home where she was taken care of and cared for until the time of her death. While at the Kibbe home she was cared for in part by Mrs. Mary E. Baxter and also by Mrs. Walterrena Cole. On the evening of March 30, 1925, about nine o'clock the testatrix requested Mrs. Baxter, who was acting as night nurse, to call Mr. and Mrs. Kibbe. This she did and Mrs. Baxter then retired from Miss Bundy's room, leaving Mr. Kibbe alone with her. The testatrix thereupon gave Mr. Kibbe instructions for preparing the will. Kibbe's office was across the hall from the room in which Miss Bundy was at the time and he went from her bedroom to his office two or three times in the course of such preparations and putting the will in typewritten form. The testatrix for more than a month had considered the making of another will. She had informed Mrs. Burnside of this intention and had given Mrs. Kibbe instructions as to what she wanted in the will. These instructions were with reference to heirlooms, keepsakes, cemetery arrangements, etc., and were written down by Mrs. Kibbe and given by her to her husband. The testatrix had also on several occasions talked with Mr. Kibbe about the matter of making another will. Grace Kibbe was not present at the time the instructions were given, nor during the preparation of the will, nor did she assist or have any part in the preparation or execution of the will other than to prepare the memorandum as requested. When Mr. Kibbe was called to the room after notice from Mrs. Baxter, the testatrix told him that she desired to make a will and that Mrs. Baxter could be the other witness and she gave instructions with reference to which the will was prepared and read over by Mr. Kibbe. In response to an

inquiry as to whether the instrument was satisfactory the testatrix said: " Yes, that is fine." Mrs. Baxter was then called into the room and the will was executed in due and legal form. No question as to its execution is raised.

The surrogate has found that the testatrix was mentally competent to execute the will and the evidence to the contrary is so slight that we do not regard it as necessary to review it. She was proved by physicians to have mental capacity and it was also shown that all of her acts were rational. In any event it was a question of fact, the determination of which we do not care to disturb, although we cannot agree with the conclusions as to the undue influence exercised on the testatrix. As bearing upon her intention to make a will in this form we have the testimony that as early as November, 1924, she had made a statement that whoever took care of her should have her property. Much has been said about her changing her plans with reference to the distribution of her property but there is every reason why such plans should have been changed. This has been in part referred to. She was afflicted with a malignant disease. She had had an operation and had left the hospital and gone to her friend to reside. This friend had found it impossible to longer care for her. She then sought the protection of the Kibbes. She was not requested or urged to go to Kibbe's, but went at her own request. She knew she was not recovering from her sickness and she no doubt felt that she would not long survive. It is not surprising that she preferred to give her small amount of property (amounting to about $1,500) to one who she knew would care for her during her remaining days. She had no relatives who were objects of her bounty and consequently was free to do with her property as she chose. She told Mrs. Burnside while residing with her that she intended to change her will. After the will was made and on April ninth (ten days after) she stated to Mrs. Newman: " I have got everything all right, just as I want it." She also made the same statement to a cousin on April third and said: " I have made my will and there isn't anything more to live for." There is no evidence in the case that any request was ever made by either Mr. or Mrs. Kibbe to the testatrix to make a third will or that she give by will or in any other manner any of her property or estate to either of them, neither is there any evidence which tends to show that the testatrix was displeased with the terms of her last will, or that it was not as she desired it to be. It appears that while the testatrix was at the Kibbe home Mrs. Kibbe cared for her during the day and Mrs. Cole and Mrs. Baxter at night, Mrs. Baxter being with her for twelve nights.

The surrogate has written a lengthy opinion covering the facts

exhaustively and reviewing numerous cases bearing upon the question of undue influence. We do not disagree with him as to the propositions of law upon which he bases his opinion, but rather upon the application of such legal propositions to the facts presented. We agree with him that " the exercise of such influence is seldom susceptible of direct proof, but there must be affirmative evidence of facts and circumstances from which the exercise of such undue influence can fairly and necessarily be inferred and established " (citing *Matter of Richardson*, 137 App. Div. 103; *Tyler* v. *Gardiner*, 35 N. Y. 559, and other cases).

It has been held that mere opportunity is not sufficient proof that undue influence was exercised. We find no element of undue influence in this case, except that of opportunity. It is true that Mr. and Mrs. Kibbe were for the greater part of the time alone in the home with Miss Bundy and there was every opportunity for the exercise of undue influence, but there are other elements which are frequently referred to in the many cases cited, which are lacking in establishing fraud in the case now before us. The surrogate cites *Tyler* v. *Gardiner* (*supra*) as follows: " Fraud is never to be presumed from the mere concurrence of temptation and opportunity, or from the mere fact that the chief actor is also the principal beneficiary. It must be established by affirmative evidence. It is thus established, however, when facts are proved from which it results as an unavoidable inference. * * * "

It is true that there was a fiduciary relation existing which required an explanation which would " satisfy the court [that] the will was the free, untrammeled and intelligent expression of the wishes and intentions " of the testatrix. The fact that such was true has in a measure already been discussed. The surrogate discusses at length *Matter of Smith* (95 N. Y. 516) from which we quote as follows: " It has been held that the fact that the beneficiary was the guardian, attorney, or trustee of the decedent, does not alone create a presumption against a testamentary gift, or that it was procured by undue influence. (*Coffin* v. *Coffin*, 23 N. Y. 9; *Post* v. *Mason*, 91 id. 539; 43 Am. Rep. 689; *Parfitt* v. *Lawless*, L. R. 2 Pro. & Div. 462.) The mere fact therefore that the proponent was the attorney of the testatrix did not, according to the authorities cited, create a presumption against the validity of the legacy given by her will. But taking all the circumstances together — the fiduciary relation, the change of testamentary intention, the age, and mental and physical condition of the decedent, the fact that the proponent was the draftsman and principal beneficiary under the will and took an active part in procuring its execution, and that the testatrix acted without independent advice, a case was made which required

explanation, and which imposed upon the proponent the burden of satisfying the court that the will was the free, untrammeled and intelligent expression of the wishes and intention of the testatrix."

This quotation is followed by the statement by the surrogate: " There is not a scintilla of evidence outside of the propounded paper and the testimony of the interested subscribing witness who drafted the will that the decedent desired to make the proponent a gift of her property, except one linen sheet and a set of beads. There is some proof the decedent did refer to the kindness of the proponent to her and remarked she would be paid."

Referring to the language in *Matter of Smith (supra)* we are of the opinion that the testamentary intention of the testatrix has been satisfactorily explained. The age and mental and physical condition of the testatrix has no bearing on this proposition except in so far as they may have weakened the power of testatrix to resist influence. There is no positive proof that any request was ever made by proponent to testatrix to make the will as drafted. The acts of the draftsman were at the request of the testatrix as they had been on two previous occasions when other wills were made. It cannot be said that testatrix acted without independent advice or at least without an opportunity of procuring the same because it appears that two or three of her friends called upon her while she was at the home of the Kibbes and also that two nurses were with her so that any request that she might wish to have made could have been expressed to them privately during the absence of the Kibbes. We disagree with the surrogate in the statement that practically every condition referred to in *Matter of Smith (supra)* exists in the case now before us. We think we have satisfactorily explained our reasons for such disagreement. We realize fully the force and effect of the surrogate's quotation from *Matter of Rintelen* (77 App. Div. 142) as follows: " If attorneys who prepare wills from which they derive substantial benefit allow them to be executed without insisting upon the testator having independent advice so that proof of his intention is available, they must take the consequences if their motives and acts are questioned and instruments which give such advantage are refused probate because the actual free and untrammeled intention of the decedent is not proved."

The rule is a good one but we do not believe that it is applicable in this case because as we have already shown the testatrix had independent advice available. It is our conclusion that the propositions of law invoked by the surrogate in his decision are too strictly applied to the facts in this case and while *prima facie* the circumstances surrounding the execution of this will may truly be said to

be of a suspicious nature, we believe that they have been satisfactorily explained. The conditions under which the will was executed were brought about by the testatrix. Neither the time, place nor surroundings were fixed by either Kibbe or his wife. There was a combination of circumstances existing at that time which could only be explained by Kibbe. No question is raised as to the credibility of the witnesses. Indeed, the surrogate in his opinion practically gives full credibility to the testimony of Kibbe, when he states that he " is a respected member of the bar practicing in the county of Delaware." If, then, his testimony is to be given full credence, we believe that his explanation of the circumstances surrounding the execution of this will is satisfactory.

The decree of the Surrogate's Court of Delaware county should be reversed upon the law and the facts, with costs and disbursements in favor of appellant and against the respondent Herman B. Bundy, and the matter remitted to said Surrogate's Court with directions to admit the will to probate. The court disapproves of the finding that the said will was procured by the improper and undue influence of the proponent.

All concur.

Decree reversed on the law and facts, with costs to the appellant against the respondent Herman B. Bundy, and the matter remitted to the Surrogate's Court with directions to admit the will to probate.

The court disapproves of the finding that the said will was procured by the improper and undue influence of the proponent.