Roy M. Page, S.
Helen M. Anderson, 76 years old, a widow and childless, died on the 4th day of March, 1955. She left an alleged last will and testament dated the 30th day of July, 1954. The petition for the probate thereof by Lester B. Mosher, nephew of said deceased and the person she had nominated as her executor, was filed March 28, 1955.
The distributees of said deceased are Mabel M. Parrott, a niece, Lester B. Mosher, a nephew, and Helen M. Weaver, Kenneth M. Weaver and James L. Weaver, children of another niece named Iva M. Weaver who had predeceased the decedent herein.
After having provided several specific bequests consisting of household articles and jewelry, the will contains provisions for several general bequests amounting to $9,600, including $1,000 to each of said grandnephews and grandniece, the objectants herein. In the form of a residuary devise and bequest, the bulk of the estate purports to have been given to Lester B. Mosher, nephew of said deceased and the proponent herein.
Objections to probate allege: (1) that the propounded will was not executed in conformity with section 21 of the Decedent Estate Law; (2) that the alleged testatrix was, at the time of its execution, not competent to make a will, and (3) that the alleged will was not freely and voluntarily executed by said decedent but was obtained by fraud and undue influence exerted by said Lester B. Mosher. The nonjury trial of this case occupied about eight days. A vast amount of testimony was taken.
The composite effect of all the evidence supports the conclusions : (1) that the will here in question was executed sufficiently in compliance with the provisions of section 21 of the Decedent Estate Law, and (2) that the alleged testatrix was mentally competent at the date of its execution. There is some evidentiary basis tending, to some extent, to show that she. on the date in question, might not have been as mentally competent as she had been generally throughout her previous adult life. However, this court is satisfied from all the evidence that, at that time, despite the fact that, for a period of several years, she had suffered from generalized arteriosclerosis, high blood pressure and cerebral sclerosis, resulting in periods of deep despondency and melancholia, she was of a mentality that more than met the *871 requisite minimum. Testimony, to any extent tending to show otherwise, is important only as it might show that the alleged testatrix was in a condition wherein she would be more susceptible to whatever, if any, influence was exercised upon her.
The only objection herein requiring special attention is as to undue influence. Undue influence is a subtle and variable concept. It is fairly to be assumed that the exertion of some influence characterizes the bringing about of the execution of most wills and that, in the circumstances surrounding a large proportion of them, including the relatively few in which influence by an interested party or parties had been practiced not so clandestinely but that evidence of it is available, the dividing line in the field of influence between “ due ” and “undue ” is often difficult of determination. Influence, dependent upon such considerations as the alleged testator’s mentality, tenacity of purpose and related traits of character and by whom the influence was exerted, which, in some cases, might be regarded as undue would be within the bounds of no more than normal and natural in other cases. (See Rollwagen v. Rollwagen, 63 N. Y. 504, 519.)
In the present case, the contestants, in relation to their objection to probate because of undue influence, are off to a good start by reason of the uncontroverted fact that the will here in question was, in all stages leading up to and culminating in its execution, supervised by deceased’s nephew, the proponent herein, who, by the terms of the alleged will, was made, .not only the chief, but very close to the sole beneficiary of a fairly substantial estate as estates go in these times, almost to the exclusion of one other (but not an objectant) of the closest degree of consanguinity to the deceased, and others, the objectants herein, one degree further removed.
Pertinent precedents are very strongly to the effect that, in any case where the chief beneficiary of an allegedly testamentary document happens to have, in the alleged testator’s lifetime, occupied some sort of relationship toward him which is generally, rather loosely, denominated as “ dominant ”, the instrument, because of this circumstance, is regarded as “ suspicious ”. Such relationships, other things being anywhere near normal, do not include close kinship. In many instances wherein the issue of undue influence is presented, there is no consanguinary connection, but some relationship such as master and servant, clergyman and parishioner, physician and patient or attorney and client. Of these, the latter is perhaps most of all the basis for the excitation of suspicion. This probably is because of the transactions having consisted of a legalistic procedure together *872 with the, not necessarily true but generally held, notion of. laymen that lawyers are more likely to be domineering than other professional men. In any such instance, an attorney-draftsman’s emergence as a testamentary beneficiary is regarded as being subject to suspicion. (Newhouse v. Godwin, 17 Barb. 236; Matter of Eckler, 47 Misc. 320; Matter of Gallup, 43 App. Div. 437; Evans v. Trimble, 169 App. Div. 363, revg. 88 Misc. 667; Matter of Marlor, 52 Misc. 263; Matter of Bedell, 107 App. Div. 284; Matter of Rintelen, 77 App. Div. 142, affg. 37 Misc. 462; Matter of Egan, 46 Misc. 375; Matter of Little, 45 N. Y. S. 2d 751; for lawyers’ influence, considered but not resulting’ in denial of probate, see Matter of Putnam, 257 N. Y. 140, affg. 231 App. Div. 707, affg. 135 Misc. 311; Post v. Mason, 26 Hun 187, affd. 91 N. Y. 539; Matter of Smith, 95 N. Y. 516; Matter of Read, 17 Misc. 195; Wilson v. Moran, 3 Bradf. 172; Matter of Bundy, 217 App. Div. 607.)
Of course, such suspicion is accentuated in a case where the attorney is not only one beneficiary among others but one who purports to have been constituted as the chief or sole beneficiary, and especially where the alleged testator had relatives as close or closer than first cousin, with whom he had maintained a normal relationship.
Such is the case we have before us herein. Such is a case whore the presumption adverse to the proponent who is also the attorney-beneficiary identified with the alleged will must be rebutted, if rebuttable at all, by strong and convincing evidence. Therefore, it is necessary to enter upon an evaluation of the evidence in this case with respect to its bearing and effect in relation to the “ suspicious ” situation of the proponent herein.
Before taking up an analysis of the evidence, one evidentiary point favorable to the proponent should be mentioned. That is that, with the exception of his sister, he was closest to the decedent from the standpoint of kinship. Moreover, in support of the propounded instrument, 36 witnesses, including several ministers, physicians and close friends of the decedent, were called by the proponent. Some of them testified in support of the adequacy of the testatrix’ mentality, others as to many instances tending to indicate that, ever since he was a young child, she had held her nephew, Lester B. Mosher, as well as his parents (who both predeceased the testatrix) in an exceptionally high degree of esteem and affection and had very much more to do with them over the years than with anyone else in the world. Several of these witnesses testified as to both of these *873 aspects of the general situation. Without exception they must be ranked as highly reputable and credible witnesses.
As previously intimated, the composite effect of this mass of testimony is convincing beyond any reasonable doubt that the testatrix was a woman of superior mentality and intelligence and that, although she was affected by the above-mentioned forms of illness and, at times, of a very despondent disposition, yet, up to and beyond the date of execution of the instrument here in question, she was possessed of ample mentality, considerably above the minimum standard required. (Delafield v. Parish, 25 N. Y. 9-121, 29.) Also, in its general effect, all this testimony tends strongly to indicate that the deceased was never a person who would be very easily influenced to do anything contrary to any settled purpose she held in her mind, and that she was a person who, as to any such purpose, was capable of clinging to it quite tenaciously. The method she chose and employed as the means of terminating her life indicates that this trait was characteristic of her. It is doubtful that one in a million, no matter how desperate his plight, could do what, according to the coroner’s testimony, she accomplished.
In his exceptionally able and excellent brief herein, counsel for the objectants submits that, bearing in mind the ailments of the decedent and their effects upon her mental processes existing at and long before the date here in question, coupled with the fact that, about seven months thereafter, she ended her life in the bizarre or, at least uncommon, manner of, having apparently inflicted some superficial knife wounds upon herself, drowning herself in a bathtub in her home, this last act confirms beyond any serious question that the alleged testatrix, at the end of her earthly life, was and had been for so many months in a state of such impaired mentality that it cannot be reasonably assumed that she was possessed of a sound and disposing mind on the day she signed the alleged will. A further contention is that, if this set of facts is in any way short of fully supporting that conclusion, then, at least, it is more than sufficient to show that the decedent, at about the time she signed her alleged will, did not have a mind of her own capable of making any stand against the exertion upon her of undue influence which, says he, presumably occurred because the proponent had both plenty o'f opportunity and plenty of motive to have exerted it.
But, as to the fact of suicide in any case, our Court of Appeals has held that, '‘ Mental derangement cannot be predicated *874 solely upon the circumstance that he killed himself. Insanity is not inferable from the mere act of suicide.” (Roche v. Nason, 185 N. Y. 128, 137 [1906]; see, also, Matter of Tymeson, 114 Misc. 643; Matter of Card, 55 Hun 607, opinion in 8 N. Y. S. 297; Matter of Holmberg, 83 Misc. 245.) if this is the most reasonable as well as the judicially established view to be taken, then, a fortiori, it would seem to be a reasonable assumption as of a time several months preceding the act of self-destruction.
A synthesis of these very few precedents to be found in New York dealing with the evidentiary weight to be accorded to an alleged testator’s having attempted suicide before signing his alleged will or having actually become a suicide shortly thereafter appears to be to the effect that, in cases such as is now before us, the fact of suicide, but along with other facts such as the suicide’s having been a person of quite advanced years, whose spouse and closest relatives, associates and lifelong intimates had all, or nearly all, passed on ahead of her, and Who, except as it might be temporarily relieved by drugs, was in almost constant pain, would neither be regarded as insane or of an intellect so enfeebled that she would be particularly susceptible to undue influence in the absence of cogent evidence aliunde indicating pronounced mental derangement existing at or about the precise time in question.
All of this, of course, is not to say that the act of suicide never constitutes evidence tending to show mental derangement. In cases where there has been a history of manifestation of delusions, any form of homicidal mania or some other well defined actual mental disease, the situation would be different. But, in the present case, except for some intimation that the deceased had entertained some suicidal notions before or soon after the date here in question, there is nothing tending to show that this case should be held as falling in the category of instances where mentally incapacitating insanity finally eventuated in suicide. This case clearly appears to be of the same category as the last above-cited group of cases.
In this case, even though there undoubtedly was both an opportunity for the exertion of undue influence and a motive for doing so, that is about as far as the evidence in relation to the objection to probate on the basis of undue influence goes. Of course, it is to be readily assumed that its exercise would seldom be done any more openly than is necessary under the circumstances. This is the probable reason why probate is so infrequently denied on this particular ground. If it is to be found that the objection because of undue influence is sufficiently *875 established, in the absence of direct evidence, there must be, at least, some logical basis, in addition to opportunity and motive, for the inference of a causal connection between proven forms of undue influence having been actually exerted and the execution of the disputed testamentary instrument. This latter requirement is not met to any sufficient extent in the present case, resulting in the conclusion that, whether or not there actually was any undue influence, sufficient proof thereof has not been adduced by the objectants upon whom rested the burden thereof.
This is a case par excellence wherein the proponent would have been well advised to have seen to it that some lawyer other than himself drafted and supervised the execution of his aunt’s will. By having failed to do this, he subjected himself to a great handicap in being able to accomplish its admission to probate. Unlike merely the requisite proof of the factum of a will as in the usual case of probate, he h'as rendered it incumbent upon himself to adduce evidence in support of the testatrix’ mental competency and her freedom from having had undue influence exerted upon her. But, by a careful consideration of the voluminous testimony of disinterested, credible and highly reputable witnesses, not substantially impeached in any way, directly or indirectly, it is well shown that, in executing her will as she did, the alleged testatrix was acting in accordance with the state of her affections and consistently with intentions which she had held firmly and continuously in her mind for a long time precedent to the execution by her of the propounded instrument. I conclude that, in this case, the will here in question is admissible to probate.
Settle and enter decree accordingly.