---

In the Matter of the Will of GEORGE R. JACOTT, Deceased.

*Supreme Court, Second Department, General Term, June 28, 1889.*

1. *Wills. Appeal.*—The general term, on reversing a decree admitting a will to probate, must enter an order requiring the submission of the questions of fact to the jury.
2. *Same.*—In such case, the questions of law are for the court, and the questions of fact ought to be submitted to the jury.
3. *Same. Questions of fact.*—Where issues of fact have been settled by an order of the general term, on reversing a decree of the surrogate admitting a will to probate, in reference to the execution of the will, testamentary capacity and undue influence, the case, where the evi-

dence is conflicting on these points, involves questions of fact for the jury.

4. *Same. Void.*—Where the testator is ignorant of the effect of a clause in his will, designed and contrived to save a legacy in case of his death within the time which would invalidate the legacy, the instrument is not an expression of his will.

5. *Same. Charitable bequest.*—And the fact that the will was read over, clause by clause, to the testator, does not affect a determination on a former appeal, that he was ignorant that a charitable bequest there in contained, would become void in case of his death within two months.

6. *Evidence. Hypothetical.*—Professional witnesses, on hypothetical questions, are permitted to testify to their opinions as to the mental condition of the testator, and his capacity to concentrate his thoughts on matters of business, to resist importunity, and generally to overcome influence.

7. *Same. Declaration of trust.*—A declaration of trust, made long subsequently to the will, is incompetent.

Appeal by a contestant from a decree of the surrogate admitting a will to probate, on which appeal said contestant seeks to bring up for review an order entered in the supreme court, denying a motion made by her for a new trial on the minutes and exceptions, and to set aside the verdict of the jury.

*Albert Bach* (*John L. Hill* and *Albert Bach*, of counsel), for appellant.

*Edward S. Odell* (*Almet F. Jenks*, of counsel), for respondents.

PRATT, J.—At a former general term we reviewed the testimony upon which the surrogate admitted this will to probate, and reversed his decree, on questions of fact. It, thereupon, became our duty to enter an order requiring the submission of the questions of fact to a jury. The Code is mandatory in this respect (Code, § 2588; Sutton *v.* Ray, 72 N. Y. 482)—and we obeyed that rule. Issues of fact were settled by that order in reference to the execution of the will, testamentary capacity and undue influence.

The case, therefore, under this order for a jury trial,

35

stood, in most respects, as if the questions of fact had arisen in an action in which the contestant had the right to a jury trial as matter of law.    When reviewed from this standpoint the course of procedure would have been very simple. Under this order the circuit court and jury were together bound to do just what the surrogate was bound to do in the first instance,—to make due inquiry into all the facts and circumstances tending the execution of this paper (Code, § 2622), the capacity of the decedent, and his freedom from restraint and undue influence.    The questions of law were for the court and the questions of fact, whatever they were, ought to have been submitted to the jury.

A few suggestions will suffice to show that the case involved questions of fact for the jury.    There was, first, the question of testamentary capacity,—a question which necessarily rests very largely upon the opinions of the subscribing witnesses.    Opinions are rarely, if ever, conclusive upon the jury in jury cases.    1 Wharton on Evi., § 455.    Then, second, on the formalities of the execution of this paper, the witness Washburn, who was the only one who was not in some way related to some of the parties or legatees, was unable to testify to one of the statutory requisites,—the decedent's request, either directly or indirectly, that he should become a subscribing witness.    This essential fact, therefore, was not proven, except as the other two witnesses. testified to it.    Looking at their relations, we find the following : Marshall was a vestryman of the church, which, under this alleged will, was to get a legacy of $10,000 out of the $16,000, which constituted the entire estate.    And besides that, his daughter was a legatee.    In addition to that it is obvious that he had been a busy partizan in striving to procure and sustain the will.    The evidence shows that decedent was not inclined to make a will at all.

It seems that this witness was active in procuring the decedent to make a will, and told him if he made no will his. property would go to the state, and his friends would have

to bury him.   So, too, the evidence showed that the witness had been very busy in efforts to sustain proponent's contentions before the surrogate.

Dr. Simmons, the family physician, who had testified before the surrogate that decedent's physical condition and suffering was such that he was unable to concentrate his thoughts upon any matter of business, here testified that Marshall came to him and endeavored to persuade him to change his testimony before the surrogate.   The contestant showed such a state of bias on Marshall's part that his credibility was a proper subject for the consideration of the jury.

The draughtsman of the will was another subscribing witness.   He was a nephew of one of the residuary legatees, who, if the legacy of $10,000 to the church failed for any cause, would take that sum.   The evidence very strongly tended to show that this legatee had done acts which were at least susceptible of an inference of undue influence and contrivance to obtain this document for his own advantage. Decedent was living alone in apartments in this legatee's house, attended only by a female nurse, who for some unexplained reason, was not permitted to be present to attend her patient while this paper was prepared and executed— and that, too, while he must have been suffering the most intense pain.

The testimony shows that decedent was strongly attached to contestant.   He told the nurse that she was " the dearest friend he had on earth."   She requested this legatee, some time before the will was drawn, to write to contestant's family of his sickness and condition.   He complied with this request, but the postal mark on the message showed that he somehow delayed posting the message until after the paper was drawn and executed ; and it cannot be fairly said that it even then adequately represented the decedent's condition.   The evidence showed that Marshall was all the while co-operating with this legatee to get decedent

to make a will, and that it was through him that the theory that "his property would go to the state," etc., was communicated to decedent.

This legatee was not related to decedent in any way, and it certainly was not natural that he should have made him a co-legatee with the pastor of the church, of a legacy which, if the church legacy fails, would amount to nearly $12,000 in cash. Without going farther into detail, it is apparent from the case that it was a fair question for the jury, whether or not this legatee had not exercised undue influence in obtaining this document. The draughtsman, at the original hearing before the surrogate, wholly omitted to testify before the surrogate that he read the will at all to decedent. This fact appears from the opinion of this court delivered on the reversal of the surrogate's decree.

It thus appears that Washburn was the only one of these subscribing witnesses who stood in the relation of a disinterested witness, and his testimony lacked an essential element required by statute ; and the testimony of the others should have been submitted to the jury on questions of credibility.

It will, of course, not be understood that we express any opinion or make intimation with respect to the weight of the testimony of these witnesses one way or the other. We simply hold that it was for the jury to decide what weight there should be given to it.

Then, again, we hold that the question of undue influence ought to have been submitted to the jury. Here was an old man afflicted with senile cystitis, a disease which the experts testify causes the severest pain which the human system is capable of bearing. The doctors say that mechanical assistance is necessary to obtain relief; and that, unless relief is obtained by those means at frequent intervals, the pain is so great that the sufferer is unable to concentrate his thoughts on anything but his sufferings. It is not denied that the drafting of this paper was not com-

menced until some three and a half hours after that assist-
ance had been given in the morning, and that the draughts-
man was thus engaged for an hour and a half.    Here, then,
was a circumstantial case, assuming its truth, which
strongly tended to show that decedent was not in a condi-
tion to make a will, and that his state was not truthfully
described by the subscribing witnesses.    He was then an
easy subject for undue influence and other specific fraud.
And it was for a jury to say whether this will was not the
outcome of that state.    The nurse testifies that when the
draughtsman and witnesses left the room she found him
groaning and even weeping, apparently in intense agony,
and that later he told her that he had been having some
writing done, but his head would not let him finish it.

Another witness testified to statements by the draughts-
man that he felt anxious lest decedent should be unable to
finish the business at all.    Certainly there was cogent evi-
dence from all these circumstances which strongly tended
to contradict the proponent's testimony, and the case
should have been submitted to the jury on that ground, as
relating to capacity.

So also on the specific question of undue influence and
fraud, as distinguished from mental incapacity resulting
from the agitated state and enfeebled bodily condition, the
case should have gone to the jury.

The opinion delivered at the former general term con-
tains this forcible and significant language bearing on this
point:    " The whole narrative is unnatural, under the
circumstances of this case ; something more than proof of
a formal execution is necessary.    There must be shown
facts which establish that the paper proposed was an in-
telligent expression of the testator's will.    Marx v. Mc-
Glynn, 88 N. Y. 357; Matter of Smith, 95 N. Y. 516.    It
is more natural to suppose that the residue clause was con-
trived and designed to save the legacy in case of the death
of the testator within two months, and there is no proof,

indeed every inference is to the contrary, that he was told or knew of the effect of his death within some two months upon the church gift, and that to meet that contingency, an absolute gift was assigned by the testator to strangers. I believe the testator was ignorant of the effect of the clause, and, therefore, the instrument is not an expression of his will."

The facts upon which the language was predicated are stated in the opinion, and, with the exception of the statement there contained that the will was not read to the testator, the same facts, or their equivalents, were proved on the trial at the circuit.

Of course it may be said that the case differs in some respects from that presented on the former appeal in that there is now the statement that the paper was read, clause by clause, and there are facts from which it is claimed that this church was not subject to the statute which affected legacies to other bodies under like circumstances. But it can scarcely be said that that point could have been so clear in the minds of these people that there was not even a motive to contrive this residuary legacy as against the possibility of its invalidity and failure of the legacy to the church. From aught that we can see, a doubt on that point would constitute quite as strong a premise upon which to base the language of the learned judge at general term, as if there had been a conviction that the law was against proponents in this respect. Indeed, we regard the case as altogether doubtful on that point now.

The learned surrogate adjudged the invalidity of this legacy on that precise ground. And the proponents themselves seem to have entertained most serious doubt on the subject, because they afterwards prepared a declaration of trust for the benefit of the church in the money which might come to them under the residuary clause. We fail to see how it is fairly debatable ground that the case has

been so changed that the language of the former opinion has become inapplicable to the case in this respect.

We also hold that the learned trial judge erred in the following rulings on the trial: Hypothetical questions reasonably descriptive of decedent's condition and disease, as shown by other testimony, were put to professional witnesses, and they were not permitted to testify their opinions respecting the resulting mental condition of the patient, and his capacity to concentrate his thoughts on matters of business, to resist importunity, and generally to overcome influence.

We also fail to see how the declaration of trust was competent evidence in any view. It was an act done long subsequent to the events upon which the case turned. Hence, the admission of this document substantially permitted proponents to make *ex post facto* evidence on their own behalf to repel inferences of fraud and undue influence. It should not have been received.

We also hold that the action of the surrogate, after the proceedings in the circuit, was not authorized.

The decree entered, and all proceedings in the surrogate's court subsequent to the trial must be reversed, vacated and set aside. The verdict must also be set aside, with all subsequent proceedings in the circuit court, and the case must be remanded to that court for a new trial under and pursuant to the original general term order settling issues and directing a jury trial. And, inasmuch as the case was taken from the jury at proponent's solicitation, the contestant should be allowed her costs and disbursements on this appeal, but we will reserve the question whether or not they shall be charged against proponents individually, or out of the estate, to abide the event of the jury trial.

BARNARD, P. J., concurs; DYKMAN, J., not sitting.