## In re MOON'S WILL.

*(Supreme Court, General Term, Third Department. December 11, 1889.)*

WILLS—PROBATE—ISSUES FOR JURY.
     Testatrix was 77 years old, and about to die. She had expressed no desire to make a will, but her nephew, with whom she was stopping, desiring her to make one in his favor, called in a friend of hers. Her employer, for whom she had worked for 20 years just previous to her last sickness, was also called in. When asked to whom she wanted to leave her property, she said to her employer, and, with prompting and assistance in writing her name, a will was made in his favor. He was not of kin to her, and, as far as appears, had no claim on her. She was unable to recognize acquaintances who called on her thereafter. She died two days later, of apoplexy, as appeared by the certificate of her death. *Held*, that a decree admitting the will to probate should be reversed, and the issues involved submitted to a jury.

Appeal from surrogate's court, Rensselaer county.

The surrogate admitted to probate an instrument purporting to be the last will and testament of Sally Moon, deceased. Sally Moon, the alleged testatrix, was an unmarried female, 77 years of age, and for about 20 years immediately before her death had been employed in the hosiery mill of Andrew B. Knowlson, the sole beneficiary under her alleged will. She became ill at the mill about six weeks before her death, and was thereafter cared for at the house of her grand-nephew, George Lamphere. The certificate of her death filed with the register of vital statistics, which by statute is made *prima facie* evidence, states that apoplexy was the chief cause of her death, and asthma the other cause. Testimony was given tending to show that she did not have apoplexy at the date of the execution of the will. The forewoman of the room in the mill in which Miss Moon had been employed was Mrs. Griggs. Between them the relations were very friendly. On the 5th of December, 1887, the date of the alleged will, Lamphere asked Mrs. Griggs to call at his house, and see Miss Moon. She called, and Lamphere then said to her that he did not think Miss Moon could recover, and added: "I want you to have Aunt Sally make a will. I have been talking to her quite a while." Mrs. Griggs thereupon sent Lamphere for Knowlson. Knowlson came. The question then arose between Mrs. Griggs, Knowlson, and Lamphere whether Miss Moon had any property, and, upon the question being asked her, she said she had two bank-books and a $20 gold-piece up-stairs in her trunk. Knowlson and Lamphere went up-stairs, and found them, as she had stated. Mr. Snyder, the draughtsman of the instrument, was then sent for, and he soon arrived. Miss Moon had been assisted to rise from her bed, and was sitting in a chair. She took no part in any conversation, except by answers to questions. She appeared to be quite ill and feeble. Mr. Snyder testified that sometimes questions had to be repeated. "She did not answer questions so very prompt." When Snyder came into the room some one said to Miss Moon that this was Mr. Snyder, and that he had come to draw her will, if she wanted him to do it. She nodded her head, without remark. Lamphere then asked her to whom she wanted to leave her property. Lamphere testifies she answered, "You," and that some one asked, "Do you mean A. B.?" and she said, "Yes." Snyder and Mrs. Griggs testify that she answered, "To Knowlson;" and Snyder testifies that he then asked, "To A. B?" and she said she did. Knowlson suggested to Lamphere that he leave the room. He went out. Knowlson then asked her what she wanted to leave to George, and she said, "Nothing." What to Nell, his baby, and she answered, "Nothing." He then asked her what she wanted to do with her property, and she made no answer. Snyder then asked her if she wanted to will all her property to A. B. Knowlson, and she said, "Yes," and he thereupon drew the instrument. He asked her about an executor, and she assented to Knowlson. He read the completed instrument to her, and asked her if it was as she wanted it, and she assented. He asked the necessary questions respecting subscribing witnesses, and she assented to Mr. Snyder and Mrs. Griggs acting in that capacity. When in health she could write quite well, but now, at the suggestion of Snyder, she put her hand to the pen, and he guided it as she made her mark. She assented to the question whether she declared the instrument to be her last will and testament, and whether she requested Snyder and Mrs. Griggs to be the subscribing witnesses. She died two days afterwards. After the execution of the instrument several of her acquaintances called upon her, but she did not recognize them. Knowlson, the sole beneficiary of the will, was not of kin to her. She left nephews and nieces. The heirs appeal.

Argued before LEARNED, P. J., and LANDON and PUTNAM, JJ.

*J. E. Hoag,* (*Orin Gambell,* of counsel,) for appellants. *McClellan & McClellan,* (*Robert H. McClellan,* of counsel,) for respondents.

LANDON, J.  The evidence is not very satisfactory as to the condition of the decedent's mind at the time of making the alleged will.  She was 77 years of age, was very ill and weak, being about to die, if not of apoplexy, at least of debility.  If she had any desire to make a will, she had not expressed it. Lamphere, her grand-nephew, in whose house she was being cared for, wanted her to make a will in his favor.  He seems to have been unsuccessful in obtaining any result, and he solicited Mrs. Griggs, her friend, to promote his wishes.  Mrs. Griggs' mind reverted to Knowlson, the common employer of herself and Miss Moon.  Knowlson was sent for.  He came, and discovering that Miss Moon had some estate, such proceedings were thereupon had as resulted in this alleged will in his favor.  Miss Moon did not make it without prompting, and evidently could not.  *Delafield* v. *Parish*, 25 N. Y. 9; *Van Guysling* v. *Van Kuren*, 35 N. Y. 70.  For 20 years, and until disabled by her last illness, she had sustained to Knowlson the relation of servant to master.  He had no natural claim upon her bounty, and it does not appear that he had any other.  Her nephews and nieces were set aside in his favor.  She had no independent advice.  He was present when the will was drawn in his favor, and took part in the conversation with Miss Moon about it.  No explanation is offered.  The question is thus presented whether this old woman, too indifferent or too torpid herself to manifest any inclination to make a will, too weak and feeble to participate in making it except as she was prompted and guided, was or was not unduly influenced by her master, whom she had so long served.  We have no reason to think that the idea had ever occurred to her to bequeath her property to him until he appeared before her that day, and began to question her about her will.  The case strongly suggests the possibility that, if she had any purpose of her own respecting her property, she yielded it to what she supposed to be his desire; that she would not and could not withstand her old master.  The undue influence thus suggested is very subtile, but may be ample to accomplish its purpose.  A party, especially a stranger in blood or affinity, holding such a dominating influence over a testator, aged, undecided, and enfeebled in body and mind, suffering under debility soon to end in death, and himself present and assisting in the testamentary act which makes him the heir, encounters a suspicion which he should be prepared to remove, or else give place to that succession which his seeming intervention has apparently displaced.  *In re Smith*, 95 N. Y. 516; *Marx* v. *McGlynn*, 88 N. Y. 357–370; *Cowee* v. *Cornell*, 75 N. Y. 91, 99; *Tyler* v *Gardiner*, 35 N. Y. 559, 589.  We do not think these circumstances, which should be grouped and then considered, had their proper influence.  We conclude to reverse the decree of the surrogate, and send the issues involved in the probate of the instrument to a jury at the Rensselaer county circuit for solution.  Costs of this appeal to be allowed the appellants out of the estate.  All concur.