Heffernan, J.
Iola W. Beneway, eighty-five years of age, died on March 18, 1946, at the home of Albert Moquin and his family in the hamlet of Claverack, Columbia County, survived by two nephews and four nieces as her sole distributees.
On'March 25, 1946, Moquin filed in the Surrogate’s Court of Columbia County a petition for the probate of an instrument in writing dated July 20, 1945, purporting to be the last will and testament of decedent in which he was named as executor.
By the terms of the paper offered for probate decedent bequeathed her entire estate, consisting of real and personal property, of the value of about $15,000 to Moquin and his wife, who were unrelated to her, with the exception of the sum of $100 to the Lutheran Church and $5 each to the nephews and nieces.
For many years Mrs. Beneway and her husband lived on a farm owned by them in Columbia County. The husband died and the widow continued to live alone on the farm for several years until January 16, 1945. In addition to the farm Mrs. Beneway owned two houses in Claverack, one of which was occupied by Moquin and his family.
While Mrs. Beneway lived alone she managed her affairs successfully with occasional assistance from kindly disposed neighbors. Due to her advanced age, she suffered physical infirmities, her memory was somewhat impaired at times, she was quite deaf and it was difficult to talk to her unless she was using a hearing aid.
On January 16, 1945, either at her own request or at the suggestion of Moquin, the correct answer to which we can never know, she went to the Moquin home and continued to live there until her death.
The nephews and nieces of decedent filed objections to the probate of the alleged will. Issues were framed for a trial by jury. Upon the trial the Surrogate, by consent of all parties to the proceeding, submitted the following questions to the jury:
*466 “ 1. Did Iola W. Beneway, the testatrix, subscribe the paper offered for probate bearing dáte the 20th day óf July, 1945, at the end thereof in the presence of each of the two subscribing witniesses, and at the time of making such subscription or acknowledgment did the testatrix declare to each of the two subscribing witnesses that the paper offered for probate was her Last Will and Testament, and were there at least two subscribing witnesses each of whom signed his name at the end of said paper at the request of the testatrix, Iola W. Beneway? ”
“2. At the time of the execution of said paper on the 20th day of July 1945, was. the said Iola W.- Beneway of sound mind and competent to dispose of her estate by will? ”
“ 3. Was the execution- of said paper caused or procured by the undue influence or fraud of any person or persons? ”
“4. Was the' execution of said paper caused or procured by the duress or coercion of any person or persons? ”
' By its verdict the jury answered questions 1 and 2 in the negative and questions 3 and 4 in the affirmative, thus, finding in favor of the contestants on the four questions submitted.
The jury’s finding on the first question is without any support in the evidence. The evidence of the two subscribing witnesses to the will and that of the lawyer who prepared it is unimpeached. According to that proof all the, requirements of law were complied with in the execution of the document and no proof was offered by the contestants to challenge it.
The principal witness sworn by contestants to establish that-decedent was not competent to make a will is Dr. Bliss. The doctor examined Mrs. Beneway on two occasions, one in February, 1945, and again in the latter part of July of the same year. She made no written record of either examination. She testified that the examination which she made, of decédent in July indicated to her that decedent was incompetent to manage herself or her affairs. She based her conclusion largely on the ground that decedent “ had a marked degree of generalized arteriosclerosis ” and “ a moderate degree of generalized arthritis ”, also that “ she had periods of confusion. * * * She had periods of forgetfulness for things which happened in recent times or within the last few days or weeks, while in contradistinction her memory for things which happened many years ago was exceedingly good.” She was asked to state the sum total of her observations and she replied: “ They are grouped together under the heading which is called senility.”
In addition to Dr. Bliss contestants produced a number of lay witnesses who said, in their opinion, Mrs. Beneway was *467 forgetful and at times irrational. There is also proof that she forgot that her brother was dead and that she did not remember Christmas. The old and infirm are necessary the subjects of a loss of memory, and it is not very unusual that some facts should have passed temporarily from decedent’s recollection.
Proponent called as a witness, Dr. Early, a practicing physician of Hudson,, who had known Mrs. Beneway for about ten years. He made examinations of her on August 20 and 21,1945 and read to the court and jury from his record his conclusions. Apparently the examination on August 20th was unsatisfactory because of the doctor’s difficulty in talking to Mrs. Beneway. On the second examination the patient was using a hearing aid and the doctor was able to converse with her intelligently. The doctor said she had a defective memory. He asked her about her present difficulties and she told him her relatives were attempting to have her declared insane so that they could get possession of her property. The fact is the relatives had made two unsuccessful attempts in the County Court, of Columbia County to have her declared .incompetent. She also discussed her financial affairs with the doctor. He swore that in his opinion she was rational and competent to manage her affairs.
The evidence of Dr. Early contervails that of Dr. Bliss. Proponent also swore a number of business men and women who had known Mrs. Beneway for many.years and had transacted business with her and all testified that in their opinion she was rational.
I am quite impressed by the evidence of County Judge William E. J. Connor. On the very day Mrs. Beneway executed the alleged will she appeared before him in one of the proceedings to have her declared incompetent. Judge Connor interrogated her on that occasion and said she impressed him as being rational.
Witnesses for proponent also testified that Mrs. Beneway had frequently stated to' them that she had pleasant surroundings in the Moquin home. That she was well treated by them and that she was attached to their children.
As a general rule and until the contrary is established a testator is presumed- to be sane and to have sufficient mental capacity to make a valid will (68 C. J., Wills, § 43, p. 445; 28 B. C. L., Wills, § 48, p. 97). Mere old age, physical weakness and infirmity or disease or failing memory are not necessarily inconsistent with testámentary capacity. The powers of the mind may. be weakened and impaired by old, age and bodily disease without destroying testamentary capacity. Nor does *468 senile dementia, often a result from old age, necessarily result in mental incapacity to make a will; to accomplish- that result there must be such a failure of mind as will deprive the testator of intelligent action (68 0. J., Wills, § 39, pp. 441-442 ; 28 R C. L., Wills, § 45, pp. 94-95).
The law looks with tender eyes on the will of an aged person and in the -absence of the clearest and most convincing proof of invalidity the courts will uphold it.
Tested by the rules to which we have referred the verdict of the jury on the second question submitted is against the weight of the evidence.
Contestants argue that because Mrs. Beneway cut off the natural objects of her bounty with $5 each and bequeathed the rest of her estate, with the exception of the small legacy to a church, to strangers, the jury had the right to find her lacking in testamentary capacity.
From the record it is clear that Mrs. Beneway had knowledge and understanding of the nature and consequences of her act in making her will. Certainly there was no obligation on her part to leave her estate to relatives who unsuccessfully attempted to have her declared incompetent. It may very well be that the motives which inspired Moquin and his wife to give this lonely, elderly woman a home were not entirely altruistic. Be that as it may and assuming that they were prompted by mercenary expectations they provided their benefactress in her last days with shelter, food, accommodation and care, which her relatives failed to do.
This brings us to the matters embodied in the third and fourth questions submitted to the jury. These matters are so interrelated that they will be discussed together. The burden of proof is on the contestants to establish undue influence, fraud, duress or coercion (Matter of Schillinger, 258 N. Y., 186).
Undue influence, which is a species of fraud, and which also embraces coercion, when relied on to annul a testamentary disposition, must be proved, and cannot be presumed (Matter of Smith, 95 N. Y. 516).
While the rule as to what constitutes undue influence has been variously stated, the substance of the various statements is that, to be sufficient to avoid a will, the influence exerted must be of a kind that so overpowers and subjugates the mind of the testator as to destroy his free agency and make him express the will of another rather than his own (68 C. J., Wills, § 436, pp. 743-744 ; 28 R. C. L., Wills, § 91, pp. 137-138; Children’s Aid Society of New York v. Loveridge, 70 N. Y. 387).
*469 ■ To invalidate a will on the ground of fraud the deception must have been such as to have induced the testator to make a disposition of his property which he would not otherwise have made, and, to constitute such, it must be shown that the testator was actually deceived (68 C. J., Wills, § 434, p. 741; 28 R. C. L., Wills, § 93, pp. 139-140).
Without recapitulating all the evidence on which contestants rely to show undue influence, coercion and fraud to induce Mrs. Beneway to make the will which she did, thereby disappointing the whims and wishes of her relatives, it is important only to analyze the testimony of their principal witness, one LaDue. This man has told a most fantastic tale. He occupied a house belonging to Mrs. Beneway which adjoined the house occupied by the Moquin family. He swore that sometime in June or July, 1945, which month he did not remember, he saw Mr. Miner, the attorney who drew the will, the latter’s secretary, and a man named Bucci,.who was a subscribing witness to the will in Mrs. Beneway’s bedroom in the Moquin home; that either Moquin or his wife said to Mrs. Beneway that they (presumably the lawyer and his companions) had drawn her will and that she should sign it; that Mrs. Beneway refused and the visitors departed. LaDue then said that after the laAvyer and those who accompanied him had left he sat in his kitchen with the windoAV and door open, the window in Mrs. Beneway’s bedroom also open, and that Moquin and his wife were pleading "with Mrs. Beneway to sign the Avill; that she refused; that when their pleading’s were unavailing they yelled at her and threatened her. LaDue said the same performance occurred on the two folloAving evening’s and continued until Iafe in the night. The nature of the threats which the Moquins are alleged" to have made to induce the making of the will is not disclosed. The evidence of LaDue is refuted by the laAvyer and by Bucci as to what transpired while they were present.
On his cross examination it developed that Mrs. Beneway was compelled to sue him for rent. He held Moquin responsible and as a result was unfriendly to him. There is no claim made that either Moquin or his wife or anyone else, made any false representation to Mrs. Beneway.
It seems to us that contestants failed to sustain the burden which the law placed upon them on these issues, and that the finding of the jury thereon is against the weight of the evidence. Contestants’ proof was neutralized, if not entirely obliterated, by that produced upon behalf of proponent.
*470 The decree appealed from should be reversed, on the law and facts, and a new trial ordered before the Surrogate of Columbia County and a jury.
Hill, P. J., Brewster, Foster and Bussell, JJ., concur.
Decree appealed from reversed, on the law and facts, and a new trial ordered in the Surrogate’s Court of Columbia County; with costs to appellant in this court payable out of the estate, and disbursements to both parties filing briefs, payable from the estate.